COLLETTE, Appellant, v. REBORI et al., Respondents.

**St. Louis Court of Appeals, October 18, 1904.**

1. **MASTER AND SERVANT: Tort of Servant: Liability of Master.** One who employs another to do an act for his benefit must take the risk of injury to third persons by either the manner or mode of performing the act; but to render the master liable in such cases, the servant must have been acting in the capacity in which he was employed.

2. ———: ———: ———. An agent employed to collect accounts is not acting within the scope of his authority so as to make the master liable when he assaults and beats a creditor, because that is not the recognized and usual means resorted to for the collection of a debt, nor one likely to bring about a settlement of a disputed account.

3. ———: ———: ———: In an action against a master for injuries caused by the assault of his servant, in such case, where there was no evidence tending to show the master was present when the assault was made nor that he aided or abetted it he was not liable.

Appeal from Greene Circuit Court.—*Hon. James T. Neville,* Judge.

AFFIRMED.

*T. J. Delaney* for appellant.

(1) Sansone was the agent for Rebori for the purpose of collecting bills and adjusting disputed accounts. Rebori is therefore responsible for all acts done by said Sansone while Sansone was acting as servant or agent of and engaged in the work of Rebori. The assault was committed by Sansone while said Sansone was attempting to adjust the disputed account and solely because plaintiff claimed the bill was paid. Eckert v. Transfer Co., 2 Mo. App. 45; Garretzen v. Duenckel, 50 Mo. 104; Smith v. Adams, 18 Mo. App. 432; Hartman v. Muehleback, 64 Mo. App. 565; Clark v. Supply Co., 72 Mo. App.

506; Knowles v. Bullene Co., 71 Mo. App. 341; Haehl v. Railway, 119 Mo. 339, 24 S. W. 735; State ex rel. v. Ins. Co., 152 Mo. 38. (2) Plaintiff was in defendant's place of business on invitation of the defendant. While there defendant owed him the duty to protect him against the brutalities of his, defendant's, servants and employees with whom plaintiff was engaged in business on account of the principal. In such case it is immaterial whether the act of agent be willful or whether it be within the scope of his employment. Brazel v. Peterson, 46 N. W. (Minn.) .331; Rommel v. Schambacher, 120 Pa. St. 579, 11 Atl. 779; Drew v. Peer, 93 Pa. St. 234; Dickson v. Waldron, 34 N. E. (Ind.) 506; Malach v. Ridley, 9 N. Y. Supp. 922; Bergman v. Hendrickson, 82 N. W. 304; McClurg v. Dearborne, 134 Pa. St. 396; 19 Am. St. 708; McDonald v. Franchere, 102 Ia. 496, 71 N. W. 427; Bryan v. Rich, 106 Mass. 180; Gerarty v. Stern, 30 Hun (N. Y.) 426. (3) . Where the servant acting even without the scope of his employment commits a willful act, whereby an injury is done to a person to whom the master owes a duty, the latter is still liable. Barrows on Negligence, pp. 170, 171; Meachem on Agency, 740.

*V. O. Coltrane* for respondent.

(1) In order to make the master liable the act of the servant must be done not only while employed in the master's service, but that act must pertain to the particular duties of that employment. Conceding that Sansone was Rebori's collector, and that he had the right to urge with words those owing Rebori to pay their bills, that would not give him authority to urge them with blows. No express authority to resort to blows in the discharge of his duties is shown, and none can be implied in law. If Sansone had been authorized to use force, and had used an excess force in the line in which he was authorized to use force, then Rebori would

be liable. But when Sansone is not authorized, either expressly or impliedly, to use force in the duties of his employment, and such employment is not of such a nature as to imply the use of force, Rebori is not liable for the assult unless he actually took part in it in some way. Before the master is liable the wrong done must be within the scope of the servant's employment. Jones v. Packet Co., 43 Mo. App. 411; Stringer v. Railway, 96 Mo. 299, 9 S. W. 905; Hartman v. Muehlebach, 64 Mo. App. 565; Walker v. Railway, 121 Mo. 575, 26 S. W. 360; Garretzen v. Duenckel, 50 Mo. 104; Haehl v. Railway, 119 Mo. 339, 24 S. W. 737; Knowles v. Bullene & Co., 71 Mo. App. 350. (2) Mere silence at the time, or approval of an assault after the commission can not make one liable therefor. Cooper v. Johnson, 81 Mo. 483. (3) The petition states a cause of action purely *ex delicto* and plaintiff can not now recover upon a contract or duty implied by construction of law. 3 Blackstone (Cooley's Ed.), p. 116; Eads v. Railway, 43 Mo. App. 536; Jones v. Packet Co., 43 Mo. App. 409; Farber v. Railway, 116 Mo. 81, 22 S. W. 631; Dillingham v. Russell, 15 Am. St. 753; Williams v. Car Co., 8 Am. St. 517.

STATEMENT.

Omitting caption and the specifications of the injury and damages, the petition on which the cause was tried is as follows:

"Plaintiff by leave of court files this, his amended petition, and for his cause of action states that on the twenty-second day of December, 1902, the defendant, A. Rebori, was engaged in the fruit business in Springfield, Missouri, under the name of the A. Rebori Fruit Company, and was the manager of said business; that on said day the defendant, Charles Sansone, was the servant and agent of said A. Rebori and in his employ as such, and that amongst other duties devolving upon said

Sansone was the collection and settlement of debts due said A. Rebori; that on said day the plaintiff herein, who had theretofore as a merchant had dealings with the said A. Rebori Fruit Company, doing business as aforesaid, called at the office of the said A. Rebori to adjust with said A. Rebori by and through his said agent and servant, Sansone, a disputed account, which said A. Rebori by and through his agent and servant Sansone claimed was due and unpaid, and payment of which was claimed by plaintiff herein; that in the discussion of said account, and in the presence of the said A. Rebori, the said Sansone cursed and abused this plaintiff without remonstrance from said A. Rebori; that thereupon plaintiff left the store of said A. Rebori, but returned for the purpose of adjusting said account and plaintiff states that while he was in the store of A. Rebori, where he had a right to be for the adjustment of said account, and while engaged in conversation with the said Sansone, as the agent and servant of the said A. Rebori, looking to the adjustment of said account, and in the presence and hearing of the said A. Rebori, who had theretofore heard said Sansone curse and abuse this plaintiff, the said Sansone cursed and abused plaintiff and wantonly and brutally and without any cause whatever struck this plaintiff, knocking out several teeth and knocked plaintiff down and against some object, thereby dislocating, fracturing and injuring the hip of this plaintiff.

"Plaintiff says that notwithstanding the premises the said A. Rebori having theretofore countenanced said assault retained and still retains the said Sansone in his employment."

Plaintiff's evidence shows that in 1902 defendant Rebori was a fruit dealer, in the city of Springfield, Missouri, and had in his employ, as collecting agent, etc., Charles Sansone; that plaintiff was at the same time engaged in keeping a grocery store in said city and made monthly purchases of fruit from Rebori; that

Rebori's bookkeeper made a mistake by charging a bill of two dollars and twenty-five cents for November purchases made by plaintiff to one Costello instead of to plaintiff. After the payment by plaintiff of his December bill, as rendered by Rebori, the error of the bookkeeper was discovered and Sansone wrote a note to plaintiff asking him to call at Rebori's place of business and settle his November account. On December 22 the plaintiff, in response to the note, called at Rebori's place of business. He was unacquainted with either Rebori or Sansone and addressed the latter as Rebori, taking him to be Rebori. He claimed to Sansone that his bills were paid and exhibited a receipted bill for his December purchases and said to Sansone, "I have a receipt for this." Sansone became angry, called plaintiff a liar and applied other opprobrious epithets to him, ending by ordering him out of the house. Rebori was nearby and heard what was said but said nothing himself. Plaintiff went out, walked a short distance away, reflected over what had transpired and concluded he would go back and see if he could not make an amicable settlement of the matter in dispute. As to what transpired on his return he testified as follows:

"I went back and I walked up to him with the bill in my hand again, and I said to him, I says: 'You abused me scandalously for nothing, and I don't like it, and you wouldn't like to be abused that way either;' but, I says, 'let's talk this matter over and get this matter settled, and perhaps we can come to some conclusion and you can reconsider that matter and it will be all right;' trying to get a settlement of this matter.

"Q. What did you have in your hand at that time? A. I had the bill in one hand and nothing in the other.

"Q. What did he do when you said that? A. He listened to me and he said: 'Wait a moment.' Then, supposing he was going about his business, and when he got leisure he would talk to me as I had asked him to, he went into the back part of the room and he just

simply turned around, and I placed my hand upon something there, I think it was a show case, this arm (right arm) that way, and held the bill in the other hand still.

"Q. Your right arm was resting on something? A. My right arm was on that object there, and the bill in this hand, when he came back. He came back suddenly and snapped his fists down quickly and says: 'If you say you paid that bill you are a liar.' I still remonstrated with the man, trying to get a settlement. I didn't call any harsh names, even, and a few more words passed between us that way, and he came at me with his hands clinched, and he came sparring at me that way. When he did that I threw up my hands to protect myself. I threw my hands up, and I got a sprain on that wrist.

"Q. He hit you first on that wrist? A. Yes, sir, he hit me there, or I threw it up against his, I didn't strike at all, and I was running back that way, and he gave me a blow and I staggered back and fell.

"Q. He struck you in the mouth with his fist? A. Yes, sir. I was leaning back, thinking I would ward off the blow. The result was that I wheeled around and fell.

"Q. What was the effect on your mouth and lips, if any? A. It cut it open so that the doctor sewed it up, and put two or three stitches in it, and it loosened two or three teeth there so at that time I could have pulled them out.

"Q. What was the effect of that blow? A. I wheeled and went around and fell, and I couldn't get up again.

"Q. What made you fall. A. That blow made me fall."

Plaintiff also testified that Rebori was in the room when Sansone made the assault. One of the witnesses, however, testified that Rebori was not in the store but outside on the sidewalk.

The suit was brought against both Rebori and San-

sone. At the close of the evidence plaintiff dismissed as to Sansone, whereupon the court, at the request of Rebori, granted an instruction in the nature of a demurrer to plaintiff's evidence. Plaintiff took a nonsuit with leave to move to set the same aside. His motion for that purpose was overruled and he appealed.

BLAND, P. J. (after stating the facts).—As the petition discloses, the suit is to hold the master civilly liable for the tort of a servant committed, as contended by plaintiff, while the servant was acting within the scope of his employment and in furtherance of the business entrusted to him by the master. There was no contractual relation between plaintiff and defendant binding defendant to exercise any greater care for the protection and safety of plaintiff while visiting the store than defendant was required by law to use for the safety of such of the general public as might visit his store on business. It is said in a number of well-considered cases that the basis of the civil liability of the master to a third person, to whom he is not bound by any contract, for the acts of his agent or servant is that the law requires that one who, as master, employs another to do an act for his benefit and who is the choice of the master, must take the risk of injury to third persons by either the manner or mode of performing the act. McDonald v. Snelling, 14 Allen 290; Railroad v. Hack, 66 Ill. 238; Schaefer v. Osterbrink, 67 Wis. 495. To render the master liable the servant must have been acting in the capacity in which he was employed, and when so acting the master will be liable although the servant abuses his authority.

Wood, in his work on Master and Servant (2 Ed.), p. 585, states the law as follows: "No decisive test can be given, but in all cases the act must have been done while engaged in the prosecution of some business for the master, and that business must have been such as the servant had authority from the master to do. That

is, he must have been authorized, either expressly or impliedly, to do the act in some manner, which he has improperly or wrongfully performed, and the fact that he was only authorized to do the act in a certain way does not save the master from liability. If he was authorized to do the act at all, the master is liable for the consequences of his doing it in a different manner, if the mode adopted by him is so far incident to the employment that it comes within its scope; for, having given the servant *any* authority in the premises, he alone must suffer its abuse. He has set the wrong in motion, and must abide the consequences as against innocent parties." This quotation is approvingly cited by this court in Voegeli v. The Pickel Marble & Granite Co., 49 Mo. App. 643.

In Stevens v. Woodward, 44 L. T. (n. s.) 153, it is said: "The act for which the master is liable must be something incident to the employment for which the servant is hired and which it is his duty to perform."

In Haehl v. Railroad, 119 Mo. l. c. 339, 24 S. W. 735, the same principle is announced as follows: "The principle of *respondeat superior* applies only when what it complained of was done in the course of the employment. The principal is responsible, not because the servant has acted in his name or under color of his employment, but because the servant was actually engaged in and about his business and carrying out his purposes. He is then responsible, because the thing complained of, although done through the agency of another, was done by himself; and it matters not in such cases whether the injury with which it is sought to charge him is the result of negligence, or unskillful or wrongful conduct, for he must choose fit agents for the transaction of his business."

In Railroad v. Randall, 40 Kan. 421, the same doctrine was announced in the following language: "The master is responsible for the acts of his employee or servant when the act is done in the prosecution of the

business that the employee or servant was engaged by the master to do. When, therefore, the employee or servant, while engaged in the prosecution of the master's business, deviates from his instructions as to the manner of doing it, this does not relieve the master from liability for his acts."

In Knowles v. Bullene & Co., 71 Mo. App. 341, it was ruled that the proprietor of a department store was liable in an action for the illegal arrest and false imprisonment of a person arrested by his floorwalker for pilfering lace from a counter in the presence of a salesman, though the proprietor was at the time absent and had instructed his servants not to arrest unless they themselves witnessed the act, for the reason that the act was within the scope of the floorwalker's authority to protect and recapture stolen goods of the master.

In Pierce v. Railroad, 44 L. R. A. 1. c. 318, the Supreme Court of North Carolina said: "The true test is, was it (the act) done by such employee in the scope of the discharge of duties assigned him by the defendant (master) and while in the discharge of such duties? If the servant volunteers to do an act beyond the scope of his employment, the master is not liable. Marion v. Railroad, 59 Ia. 428.

In Bowler v. O'Connell, 27 L. R. A. (Mass.) 173, it was held that the test of the master's liability is this: Was the act done for the purpose or as a means of doing what the servant was employed to do? If not, then in respect to that act the servant was not in the course of the master's business.

In Jones v. Packet Co., 43 Mo. App. 399, it is said: "A master is not liable for every act which a servant may do while acting about the master's business. The act must not only be done while the servant is employed about the business of the master, but it must also pertain to the duties of the employment. And *held*, that, where the second mate of a boat engaged in inland navigation used violence for the purpose of compelling a

deck-hand to work, and the deck-hand did work under such compulsion, the master would not be liable for the wrong done, in the absence of evidence of the delegation of such authority to the mate."

The distinction attempted to be drawn in this case is more subtle and astute than sound and appears to be opposed to the long line of decisions in this and other States holding the master liable for the tortious acts of the servant when done in the course of his employment whether authorized by the master or not, and is, in effect, overruled by the later case of Voegeli v. Pickel Marble & Granite Co., supra, where the court said: "The test is not the lawfulness or the unlawfulness of the means adopted by the servant to accomplish his master's business, but it is whether such means are so far incident to the employment as to come within its scope." This language finds support in Dearmin v. Schnell, 71 Mo. App. 507; Ins. Co. v. Owens, 81 Mo. App. 201; Garretzen v. Duenckel, 50 Mo. 104; Greer v. Lafayette County Bank, 128 Mo. 558, 30 S. W. 319.

The cases illustrating the application of this doctrine are legion but are not all consistent. Some, like Jones v. Packet Company, are curious. The best considered cases hold that the master is liable to third persons for the negligent, fraudulent or tortious acts of his agent or servant when it is shown that the agent or servant was acting within the scope of his employment and that the act complained of was done as a means or for the purpose of doing the work assigned him by the master. To assault and beat a creditor is not a recognized or usual means resorted to for the collection of a debt, nor is it one likely to bring about a settlement of a disputed account. The evidence shows that when plaintiff returned to the store for the purpose (as he says) of amicably settling the disputed account and made known to Sansone his purpose, Sansone did not take up the settlement of the account with him, but without the least provocation assaulted and beat him, not for the

purpose of settling or collecting the account, but to gratify his private malice against the plaintiff. He was not, therefore, about his master's business nor acting within the scope of any authority delegated to him by defendant. For these reasons the rule of *respondeat superior* does not apply.

There is no evidence tending to show that defendant was present when the assault was made, that he aided or abetted Sansone in making it or counseled or advised him to make it, hence there was a failure of proof and the learned trial judge did not err in taking the case from the jury. The judgment is affirmed. *Reyburn, J.,* and *Goode, J.,* concur.