BEN RICHMOND, Respondent, v. MISSOURI, PA-
CIFIC RAILWAY COMPANY, Appellant.

**Kansas City Court of Appeals, February 19, 1912.**

1. **NEGLIGENCE: Personal Injuries.** Plaintiff sued for damages
   received when a freight car, loaded with farm utensils, house-
   hold goods and live stock in which he was standing, was struck
   with great force by a string of cars which the employees of
   defendant were coupling on to it. The contents of the car
   belonged to his mother and he was accompanying it to care
   for the live stock. The shock of the collision was so violent
   that the furniture, machinery and stock in the car were knocked
   down, he was thrown about ten feet and the car driven from
   its station about fifty feet. *Held*, that a sudden jar or jerk of
   such tremendous force was not one of the ordinary incon-
   veniences and dangers necessarily attending the method of
   transportation in handling freight cars.

2. ——————: ——————: **Instruction.** An instruction which requires
   the jury to find that the switchman had actual knowledge of
   the presence of plaintiff in the emigrant car before there can be
   any liability is faulty for the reason, there may be liability, if
   they could have known of his presence in the car, by the ex-
   ercise of reasonable care.

Appeal from Jackson Circuit Court.—*Hon. James H.
Slover*, Judge.

AFFIRMED.

*Martin L. Clardy* and *E. J. White* for appellant.

*A. R. Hammett* and *T. C. Sparks* for respondent.

BROADDUS, P. J.—The plaintiff's action is to
recover damages for injuries received from being
thrown down while in a Wabash railroad car when
other cars were coupled on to it in the defendant's
yards at Kansas City, Missouri, on the 20th day of
May, 1909. The plaintiff was accompanying a car of
household goods, farm utensils, and live stock belong-
ing to his mother and was standing at the time of his
injury.

The contract of shipment was entered into between Mrs. Richmond, his mother, and the Wabash Railroad Company, which provided that said railroad company would transport the goods and stock from Huntsville, Missouri, to Kansas City, Missouri, and there turn them over to a connecting carrier of its own selection to be by it forwarded to Pleasanton, Kansas; that the Wabash Railroad Company transported the car containing the goods and live stock from the initial point to a point near Kansas City, and there delivered or caused it to be delivered to the tracks of defendant to be transported to its destination. That the terms of the contract of shipment provided that plaintiff was to accompany the shipment to care for and feed and water the stock while the same was en route.

The accident happened while the car was standing in defendant's yards. Plaintiff claims that the shock was so violent that all the furniture, machinery and stock in the car were knocked down; that he was thrown about ten feet, the leg of a new pair of overalls he was wearing was torn out, the two by four pieces holding the goods in place were torn loose and the car was knocked about fifty or sixty feet. In the car besides the household goods and farm implements, the live stock consisted of two horses and two cows. The car remained in the yards a long while before it was taken up to be forwarded to its destination.

Plaintiff testified that while the car was standing on the track he had a conversation with two men he saw engaged in switching, who wanted him to buy drinks; that he told them he had no money to buy anything with; that he heard them say "we will jar that old hay-seed up," and they then went up the tracks "and about an hour and a half afterwards when I got in the car they turned a string of cars loose on me." He stated that his injuries consisted of a hurt on the

knee and his foot was mashed by a stove falling on it; and that he was injured on the back and breast and on the head; that after he got to Pleasanton he went out to a farm about three miles distant; that he used turpentine, coal oil and lard on his injured foot until his mother came, which was shortly after his arrival. When his mother came they went to Doctor Green but did not find him, but that shortly afterwards he saw Doctor Green who gave him liniments and "different things;" that he lived on the farm until the fall of 1910, during which time he visited Dr. Green once or twice a week; that the doctor treated him at every visit and cautioned him not to go without remedies for his foot; that he paid him in part for his services but was not definite as to the amount of such payments; that he still suffers from his injury.

Dr. Green testified that he examined plaintiff's injuries and found his foot was enlarged and swollen, and as to whether any bones were broken he could not tell; that he told plaintiff the only way to find out would be by an X-Ray examination; that he was coughing quite a little at the time of his various visits to his office; that he doctored him for his cough, as well as for his foot and back; that the "foot continued swollen for an indefinite time" and was still large when he last saw him; that his treatment continued from April 26th to November 29th which was the last time he prescribed for him; that plaintiff visited him twenty-four times in all; and that plaintiff's bill for his services was about $17.25 which he paid.

Plaintiff's mother, who testified in the case, was asked on cross-examination if she had ever had a suit against a railroad company. She answered yes, against the G. H. & S. A. Railroad in San Antonia, Texas; that there was a wreck on the road in which she was injured. After stating how much she recovered for her injuries and other matters she was asked to state who was her attorney. The plaintiff's counsel

objected to the question, the objection was sustained, and defendant excepted to the ruling of the court.

The shipping contract contained the following clause: "All persons thus passed are at their own risk of personal injury from any cause whatever." There was also a clause to the effect that the person accompanying the shipment should be inside of the caboose attached to the train whenever either should be in motion; "and that whenever such person or persons shall leave the caboose, or pass over or along the cars or tracks of the company or connecting lines they shall do so at their own risk of personal injury from any cause whatever."

The defendant's evidence in most respects directly conflicted with that of plaintiff; but for the purpose of the case it is not necessary to detail it. It is sufficient to say, if true, plaintiff was not injured at the time and place and in the manner he claims he was. Reference to other facts and the instructions given and refused by the court will be made later on in the opinion. The jury returned a verdict for the plaintiff in the sum of $1800. The plaintiff entered a remittitur for $300, whereupon the court rendered judgment for plaintiff for $1500 from which defendant appeals. The defendant submitted two demurrers to plaintiff's case, one at the close of his testimony and one at the close of all the testimony, both of which the court overruled. Such action of the court is assigned as error.

Appellant contends that persons travelling on freight trains submit themselves to the inconvenience and danger necessarily attending that mode of conveyance, and as sudden jerks and jars are mere incidents to that method of transportation, passengers assume the risk of being injured thereby. [Hedrick v. Ry. Co., 195 Mo. 105, and many other cases.] There is no dispute about the law in such instances, but there can be no real pretense that it has any application to the facts of this case. Are we to be told that a sudden

jar or jerk of the car of such tremendous force as to tear loose from their fastenings the stanchions that had been placed in the car to separate the goods from the live stock, that threw the plaintiff ten feet from the place where he was standing, and drove the car itself fifty or sixty feet from its station, was one of the ordinary inconveniences and dangers necessarily attending the method of transportation in handling freight cars? The act was more than mere negligence; it would be better characterized as an unjustified assault and battery.

But it is contended that there was no evidence that the parties in charge of the engine knew that plaintiff was in the car at the time. There was evidence that defendant's switchmen knew that plaintiff was in the car, and it tends to show that the force employed was intentional because plaintiff had refused to supply the switchmen with drink. The force of the concussion was of such an extraordinary character that it is strongly coroborative of plaintiff's theory that the act was intentional. But the evidence is not conclusive that such was the fact. It may have been that it was the unintentional carelessness of the switchmen that brought the cars together with such force. In the event the act was intentional, yet done while the switchmen were performing their duties as such, the company would be liable for the wrong. If the act was done by the switchmen wantonly, and not while the switchmen were engaged in doing the work of the company, then defendant would not be liable for the wrongful act, and it is so conceded by respondent. [Walker v. Railroad, 121 Mo. 575; Burger v. Railroad, 123 Mo. 679.] However, the fact that the act was done in the defendant's switch yards and by switchmen engaged in the work of switching does not raise the presumption that they were acting within the scope of their employment, yet it is a circumstance of much probative force tending to show that the act complained of was performed

while the employees were in the line of duty. If the act was willful, and, therefore, tortious under the circumstances, the defendant would be liable. [Landers v. Railroad, 134 Mo. App. 80; Collette v. Rebori, 107 Mo. App. 711; Nachl v. Railroad, 119 Mo. 325; Grattan v. Suedmeyer, 144 Mo. App. 719; Bouillon v. Light Co., 148 Mo. App. 462.]

The defendant asked an instruction containing its theory of the law as to that question which the court overruled. The action of the court is alleged as error. The instruction reads as follows: "The court instructs the jury that if you believe from the evidence in this case that a switchman or switchmen in defendant's employment willfully and with the intention to injure or annoy plaintiff caused a car or cars to strike against the emigrant car in question when it was no part of their duties to move said cars, or if you believe it was a part of their duties to cause said cars to come together, you are further instructed that if they willfully as aforesaid caused them to come together or collide with unnecessary violence for the purpose of injuring or annoying plaintiff as aforesaid, then your verdict must be for the defendant." The instruction was faulty in that defendant coupled with it other expressions to the effect that defendant would not be liable notwithstanding the switchmen were acting within the line of their duty if the bringing of the cars together was willful.

The 6th instruction asked by defendant and refused by the court defendant insists should have been given. It is to the effect that if the "employees" of defendant did not know that plaintiff was in the car at the time in question, then they were not required to exercise the same degree of care which would have been required if they had known that he was in said car. Respondent contends that the word "employees" was misleading as it included all of the employees of defendant and should have been limited to those in

charge of the switching at the time. In other words, that the expression was too broad and required such knowledge from all such employees of defendant. We believe the instruction should not be rejected for that reason, because there is a much better one, in that it requires actual knowledge, whereas the defendant is liable if the said employees could have known by the exercise of reasonable care that plaintiff was in said car at the time mentioned. All the attending circumstances tend to show that defendant's employees should have known, if they did not in fact know, by the exercise of reasonable care that plaintiff was at the time in said car.

Defendant contends that plaintiff's instruction No. 1 is misleading in the following particulars: In assuming that the car was struck while it was standing on the tracks in the freight yards of defendant; that he entered it for the purpose of caring for and feeding the live stock; and that while so engaged defendant's agents negligently ran a train of cars with great and unusual force into it when they knew or might have known by the exercise of ordinary care for plaintiff's safety that he was in the car, etc. The insistence is that the instruction assumes the facts referred to as true. We think not. The instruction by its terms according to every fair rule of construction requires the jury to find the existence of all the facts. But there is the further objection that the term negligence is not defined. It has been often held that it was a term not necessary to be defined. It is only in certain instances that it is required, but this is not one of them.

Plaintiff's instruction No. 5 on the measure of his damages is also assailed. But we think it is substantially correct and supported by the evidence and was not misleading. Objections to the admission and rejection of evidence we think are merely technical and the defendant could in no sense have been prejudiced thereby. We have not noticed all the alleged errors

raised by the appeal for the reason that they are so unsubstantial, and we do not think they could have changed the verdict had the ruling of the court been otherwise. The judgment is affirmed. All concur.