James E. HENDERSON, Plaintiff-Appellant,

v.

LACLEDE RADIO, INC., a/k/a Radio Station KATZ, Defendant-Respondent.

No. 57111.

Supreme Court of Missouri,
Division No. 1.

Feb. 11, 1974.

Motion for Rehearing or to
Transfer to Court en Banc
Denied March 11, 1974.

Raymond Howard, St. Louis, for plaintiff-appellant.

Donald U. Beimdiek, and J. D. Leritz, Kenney, Leritz & Reinert, Professional Corp., St. Louis, for defendant-respondent.

SEILER, Judge.

This is an appeal by plaintiff, who recovered a $60,000 verdict, from the action of the trial court in sustaining defendant's motion for new trial in a case where plaintiff had brought suit for damages against defendant radio station for personal injuries resulting from an assault by one of defendant's employees in the collection of an unpaid account.

We have jurisdiction for the reason that the appeal having been filed prior to January 1, 1972, at a time when we would have had jurisdiction of the case, we retain and dispose of the case in accordance with the mandate of Sec. 31 of the 1970 amendment to Art. V, 1945 Mo. Const., V.A.M.S.

The trial court granted a new trial on the basis of alleged error in an instruction given by plaintiff involving a deviation from MAI language. Here, the parties, of course, respectively attack and defend the action of the trial court but, in addition, defendant renews its point that plaintiff failed to make a submissible case on re-

spondeat superior and hence, in any event, the trial court should have sustained defendant's motion for a directed verdict. We agree and accordingly remand with directions to enter judgment for defendant.

According to plaintiff's side of the case, Del Cook was a salesman engaged in soliciting advertising for defendant radio station. Plaintiff, a commercial or news photographer, had known Cook for several months and at one time had done a small amount of photographic work for Cook, who at an earlier date was engaged in publication of a short-lived magazine venture. Later, after Cook was employed by defendant as a salesman, plaintiff purchased advertising time on the radio station from Cook. He made a $5.00 payment to Cook and received a bill from the radio station for four broadcasts at $5.00 each for a total of $20.00. Plaintiff's testimony was that he called the radio station about the bill and was told by the girl who answered the telephone that he could either pay by mail or give it to the collector. Plaintiff told her Cook was the person he did business with and the girl told him Cook would collect it and if he did not, plaintiff could mail it in. Early the following day, and with no expectation of seeing Cook, plaintiff at 4:00 a. m. was at an all-night cafe in East St. Louis where he was waiting to take some commercial photographs of a group of people who were then inside a tavern next door to the cafe. Plaintiff was putting a coin in the music machine when he heard defendant's salesman, Del Cook, call to him. Plaintiff looked around. Cook asked him for the money plaintiff owed the radio station. Plaintiff responded that he had called the station and had been told he could pay it the next week. Plaintiff said Cook's answer was that he wanted it because "he was my collector." Cook demanded the money and plaintiff did not give it to him. Then, in plaintiff's words, Cook "ran into me with his body and all, knocking me to the floor, and said he wanted the money." Plaintiff was on the floor with Cook on top striking him until someone pulled Cook off. The testimony was that Cook was a large man, around 6 feet in height, weighing over 200 pounds, and that plaintiff was about 5' 9" in height and weighed about 150 pounds.

Three or four of the customers put Cook outside. Plaintiff, thinking Cook had gone, went outside after three or four minutes, but Cook was there and ran into plaintiff again, again knocking him down. At the same time plaintiff dropped his camera and case and when he started to pick them up, Cook kicked him in the face, using the toe of his shoe, kicking him below the left eye with sufficient force to break a bone in the face, trap one of the eye muscles in the dislocated bone, produce bleeding, and permanently impair the eyesight of the left eye. Plaintiff got to his feet, said he did not know what to do, and paid Cook the $15.00, for which Cook gave plaintiff a receipt. Plaintiff did not produce the receipt, but he received no further bills from the radio station. Plaintiff went to his room and then to a hospital, where he was treated for his injuries.

When asked if Cook were sober or intoxicated, plaintiff said he did not know, that "[h]e acted wild." A witness produced by plaintiff testified that he saw plaintiff and Cook outside the cafe and they were quarrelling. Cook was saying what he would do to plaintiff if plaintiff did not pay him. He saw Cook kick plaintiff in the face and grabbed Cook and shoved him away. This witness, who was a bouncer from the next door tavern, acted as a peacemaker and told plaintiff to pay Cook and for Cook to give plaintiff a receipt. Plaintiff put in evidence portions of the deposition of the sales manager for defendant radio station. These portions were that Del Cook was a salesman working directly under the sales manager; that Cook's duties were to solicit advertising and his usual hours were from 9:00 a. m. to 5:00 p. m., but there was no prohibition against his working after hours; that Cook also would write copy for the sta-

tion; that Cook did collect on occasions and was not prohibited from doing so.

The defendant's evidence was that the altercation came about because of a dispute over money which plaintiff claimed Cook owed him because of the photographs plaintiff had taken for Cook's magazine. Defendant's testimony also was that there were no instructions to Cook to collect the bill from plaintiff; that collections were not Cook's primary responsibility although he could accept money or collect bills if he wanted to; that the collection was done by the bookkeeping department; that in a small bill of this size the station did not consider the bill delinquent until more than 60 days had passed (which was not the case here) and then the practice of the station was not to turn it over to a salesman, but to employ a collection agency. Cook was paid on the basis of a weekly drawing account plus 15% commission on his sales. Cook entered the employment of the station about five months before the assault and left some four or five months afterwards to go to California. The $15.00 collected by Cook was received by the station and no offer to return it to plaintiff was ever made.

As said in Collette v. Rebori, 107 Mo. App. 711, 82 S.W. 552, 555 (1904), where an employee who was employed as a collecting agent assaulted and injured a debtor in an effort to collect an account for the employer, all this occurring in the employer's place of business, " . . . The best-considered cases hold that the master is liable to third persons for the negligent, fraudulent, or tortious acts of its agent or servant when it is shown that the agent or servant was acting within the scope of his employment, and that the act complained of was done as a means or for the purpose of doing the work assigned to him by the master. To assault and beat a creditor is not a recognized or usual means resorted to for the collection of a debt, nor is it one likely to bring about a settlement of a disputed account . . . "

See, also, annotation, Liability for assault by employee in collecting debt, 22 A. L.R.2d 1227.

On the matter of the use of force by an employee, we note the following from Restatement of the Law of Agency 2d, Sec. 245, pages 537 and 539:

"Use of Force A master is subject to liability for the intended tortious harm by a servant to the person or things of another by an act in connection with the servant's employment, although the act was unauthorized, if the act was not unexpectable in view of the duties of the servant.

" . . .

"c. Nature of employment. Whether or not an employment involves or is likely to lead to the use of force against a person of another is a question to be decided upon the facts of the individual case. To create liability for a battery by a servant upon a third person, the employment must be one which is likely to bring the servant into conflict with others. The making of contracts, or the compromise, settlement, or collection of accounts, does not ordinarily have this tendency. On the other hand, the employment of servants to guard or to recapture property, to take possession of land, or to deal with chattels which are in the possession of another, is likely to lead to altercations, and the master may become liable, in spite of instructions that no force shall be exerted against the person of the possessor."

In point, adverse to plaintiff, and of controlling effect, is the decision by this court en banc in Wellman v. Pacer Oil Co., 504 S.W.2d 55, decided December 10, 1973, where the court referred with approval to Restatement of Agency 2d, Sec. 231, comment a, which refers to the master not being responsible for acts which are clearly inappropriate to or unforeseeable in the accomplishment of the authorized result and also to Sec. 235, comment c, which speaks of outrageous acts, pointing out that the

fact that an act is done in an outrageous or abnormal manner has value in indicating that the servant is not actuated by an intent to perform the employer's business.

■ Taking everything plaintiff says as true, giving him the benefit of all disputed fact issues, the reasonable inferences therefrom and anything helpful from defendant's evidence, even so, in the case at hand, the salesman, Del Cook, was guilty of an outrageous and unforeseeable act. Over the collection of a $15.00 account, he made an unprovoked and powerful attack on plaintiff, a much smaller man, and delivered a heedless-of-consequences kick to plaintiff's unprotected eye, while plaintiff was trying to pick up his camera, of sufficient force to fracture a bone in the face and destroy part of plaintiff's eyesight. The act was both outrageous on the part of Cook, and unforeseeable so far as the employer was concerned and not within the scope of his employment, and accordingly, under the Missouri cases cited above, did not create liability on the part of the employer.

The trial court should have sustained defendant's motion for a directed verdict and the cause is accordingly remanded with directions to enter judgment in favor of defendant.

HOLMAN, J., concurs.

BARDGETT, P. J., concurs in result in separate concurring opinion filed.

BARDGETT, Presiding Judge (concurring in result).

I concur in the result reached in this case on the grounds that plaintiff failed to elicit sufficient evidence so as to permit of a jury finding that Cook was acting within the scope of his employment when, at 4:00 a. m., Cook accidentally came in contact with plaintiff in a cafe and undertook to collect a debt due his employer, the defendant. It is my understanding that the foregoing is, in part, the basis for the result reached in the opinion of Seiler, J. In my opinion, it is not necessary to reach the question of whether or not the specific conduct of Cook was, under the facts of this case, so "outrageous" as to preclude recovery under Wellman v. Pacer Oil Co., 504 S.W.2d 55 (Mo.1973).