Mary E. WAGSTAFF, Administratrix of
the Estate of Thomas E. Brown,
Deceased, Plaintiff-Respondent,

v.

The CITY OF MAPLEWOOD, a Missouri
Municipal Corporation,
Defendant-Appellant.

No. 41606.

Missouri Court of Appeals,
Eastern District,
Division Four.

March 31, 1981.

Motion for Rehearing and/or Transfer to
Supreme Court Denied April 24, 1981.

American Civil Liberties Union of Eastern Missouri Tom Mendelson, University City, for plaintiff-respondent.

Moser, Marsalek, Carpenter, Cleary, Jaeckel, Keaney & Brown, Donald L. James, Lawrence B. Grebel, St. Louis, for defendant-appellant.

SIMON, Judge.

The City of Maplewood (City) appeals from a verdict and judgment of $25,000 for the wrongful death of Thomas Eugene Brown. The City raises four points on appeal: (1) the trial court erred in overruling its motion for a directed verdict, (2) the court erred in refusing to submit to the jury a non-MAI definition of "scope of employment", (3) the court erred in submitting to the jury a res ipsa loquitur instruction and (4) the submitted definition of "negligence" imposed upon the City a higher standard of care than is required when handling weapons. We affirm.

The City does not question the sufficiency of the evidence, therefore, a brief statement of the facts shall suffice. Thomas Brown suffered from severe mental retardation. His condition was manifested by mumbled speech and a nervous fidgety manner. Brown had been treated at various institutions most of his life but was living in a community support program under the auspices of the St. Louis State Hospital at the time of his death. Brown's total income at the time of his death was $70.00 per month Social Security. Brown's mother, plaintiff, supplied the balance necessary for his support.

On the day of his death, Brown and a friend, Bobby Duncan, went to the E. J. Drug Store. Brown asked Duncan to go into the store and "find out about" a money order which Brown had taken from E. J. Drug the day before. A store clerk recognized the stolen money order and summoned the police. Brown had entered the store shortly after Duncan and both men were apprehended and taken to the Maplewood police station.

Officer Zweifel, who drove Brown to the police station, testified that it was apparent to him that Brown was mentally retarded due to Brown's mannerisms and his inability to remember his birth date. After Brown was identified in a line up, he was placed, along with Duncan, in a room for questioning. Officers Pool and Polidori conducted the interrogation. Duncan testified that during the questioning Officer Polidori pointed his gun at him, then withdrew the gun, loaded it and placed it in its holster. Officer Pool then accused Brown of stealing the money order during which time Pool was handling his gun. Pool emptied his gun's cartridges onto a table then asked Duncan and Brown to each pick a number. Brown said "one", Duncan said "ten" or "seven", then Pool "pointed the gun right at Tom, straight and shot him." Duncan did not see Pool put a bullet in the gun nor pull the trigger but only saw "Tom get shot and fall, fall back, and he was dead."

The case was submitted to the jury on a res ipsa loquitur verdict director. A verdict was returned in favor of Brown's mother as the administratrix of his estate in the amount of $25,000.

The City's initial point is that the trial court erred in overruling its motion for a directed verdict because the evidence indicated that Officer Pool's actions which resulted in Brown's death were "outrageous, criminal and excessively violent" and were therefore not within the scope of his employment as a matter of law.

■ The City correctly asserts that if they are liable for Pool's assault on Brown such liability must be based upon the doctrine of respondeat superior. Under that doctrine a master is liable for the torts of his servant which are committed within the scope of his employment. *Light v. Lang*, 539 S.W.2d 795, 799 (Mo.App.1976).

The City concedes that Pool was their employee at the time of the incident but disclaims liability for Pool's actions in that the outrageous and irresponsible nature of Pool's act removed it, as a matter of law, from the scope of his employment. In sup-

port of their position, the City relies on the cases of *Wellman v. Pacer Oil Co.*, 504 S.W.2d 55 (Mo. banc 1974) and *Henderson v. Laclede Radio, Inc.*, 506 S.W.2d 434 (Mo. 1974). In the *Wellman* case plaintiff sought to recover damages for injuries suffered when he was shot by defendant's employee, a gas station attendant. Wellman and the attendant became involved in an argument over the attendant's alleged failure to properly secure the hood of Wellman's car after servicing it. The argument became heated and came to a climax when the attendant shot Wellman. In *Henderson*, the plaintiff was assaulted by defendant's employee while he was attempting to collect an overdue account from plaintiff.

The court found, in both cases, that the employees' acts were outrageous, criminal, unforeseeable by the employer and were, therefore, not within the scope of their employment. *Wellman supra* at 58; *Henderson supra* at 437. The City's reliance upon these cases is misplaced. The employees' acts in *Wellman* and *Henderson* were clearly intentional. Such is not the case here. The jury in this case found the City's employee guilty of a negligent act, not an intentional one.

■ The doctrine of respondeat superior renders an employer liable for negligent acts committed by the employee within the course of his employment. *Atterbury v. Temple Stephens Co.*, 181 S.W.2d 659, 662 (Mo.1944); Restatement of Agency § 243 (1957).

An employee's act is within the scope of his employment if the act is of the kind he is employed to perform, occurs within the authorized time and space limits and is performed, at least in part with, the intent of serving the employer. Id. § 228. Officer Pool's negligent act occurred during the interrogation of Brown. Interrogation of suspects is a duty performed within the normal course of police work. The City does not argue that Officer Pool was not authorized to conduct interrogations. Obtaining answers to questions relating to the commission of crimes serves the interests of

the City in solving such crimes. There is no evidence that in conducting his interrogation of Brown, Pool had any motive other than performance of his duties as a police officer.

■ Where the employer sanctions the use of force under certain circumstances, he cannot escape liability when the employee, while intending to act for his employer, "makes a negligent mistake of fact or in an excess of zeal uses more than necessary force, or commits an error of law as to his privilege, or does an act combining all of these errors." Id. § 245, Comment e. Officer Pool made a tragic negligent mistake of fact the precise nature of which is not revealed by the evidence. His mistake may have been in assuming the gun was unloaded, that his finger was not on the trigger or perhaps that the safety catch was engaged. Regardless of the nature of the mistake it is one for which the City is liable.

■ The City claims in its second point that the court erred in refusing to submit to the jury the specific question of whether Pool's actions were so outrageous or so excessively violent as to be outside the scope of his employment as a matter of law.

The court submitted the following pertinent instructions:

### INSTRUCTION NO. 3

Your verdict must be for plaintiff if you believe:

First, the detective Pool was an employee of the City of Maplewood and was conducting an interrogation within the scope and course of his employment by The City of Maplewood at the time of the shooting, and

Second, Pool had within his control a .45–caliber pistol, and

Third, the pistol discharged, and

Fourth, from the facts in evidence and the reasonable inferences therefrom, you find such occurrence was the direct result of Pool's negligence, and

Fifth, as a direct result of such negligence, Thomas E. Brown died, and

Sixth, Thomas E. Brown was an adult who died without a wife and any children and plaintiff was appointed by the Probate Court for the City of St. Louis, Missouri, as administratrix of his estate, and

Seventh, one or more of decedent's heirs sustained pecuniary loss.

(MAI Nos. 18101 modified, 31.02(3) modified, and 20.01 modified. By plaintiff)

### INSTRUCTION NO. 6

Acts were within the "scope and course of employment" as that term is used in these instructions even though not specifically authorized by The City of Maplewood if:

1. they were done by Pool to further the business of The City of Maplewood under the general authority and direction of The City of Maplewood, and

2. they naturally arose from the performance of Pool's work.

(MAI 13.02, by plaintiff)

The City complains that Instruction No. 6, defining scope of employment was an erroneous submission because it does not reflect the definition of scope of employment as established in the *Wellman* and *Henderson* cases. The City tendered the following instruction which was refused by the trial court.

Acts were not within the 'scope and course of employment' as the term is used in these instructions if they are so excessively violent as to be totally without reason or responsibility.

The City is incorrect in its conclusion that the trial court's failure to submit its instruction resulted in a failure to submit an issue in the case to the jury. In its refusal to submit the offered instruction the trial court merely declined to adopt City's definition of "scope of employment" over that specified by MAI. Rule 70.02(b) mandates the submission of MAI where there is an applicable instruction available. The verdict director, Instruction No. 3, (A modification of MAI Nos. 18.01, 31.02(3), 20.01), the submission of which City does not complain, contained the terms "scope of employment."

Submission of MAI 18.01 requires a submission also of "the appropriate definition" of scope of employment. MAI 18.01, Notes on Use. The appropriate definition of "scope of employment" is the one contained in MAI and the use of any other definition such as the one City suggests would have been error. *Fowler v. Laclede Gas Co.*, 488 S.W.2d 934, 937 (Mo.App.1972). See *Peak v. W. T. Grant Co.*, 409 S.W.2d 58, 60 (Mo. banc 1966). We find no error in the submission of MAI 13.02.

 In its third point City claims that the court erred in instructing the jury on res ipsa loquitur. City bases its argument on cases holding that submission of a res ipsa loquitur instruction is improper where specific acts of negligence have been proven. The court in *Venditti v. St. Louis Public Service Co.*, 226 S.W.2d 599 (Mo.1950), upon which the City relies, held that the plaintiff, in proving that her injuries resulted from a collision between the bus she was riding and another bus, proved the specific negligence of defendant which resulted in her injuries and, therefore, submission of the case on res ipsa loquitur was error. *Id.* at 603. While the general rule underpinning the *Venditti* court's decision still holds true, the *Venditti* court's broad application of the rule to all situations wherein the evidence is sufficient to make a submissible case of specific negligence was disapproved in *Williams v. St. Louis Public Service Co.*, 253 S.W.2d 97, 102 (Mo. banc 1952). In *Williams*, as in *Venditti*, plaintiff was injured while riding on public transportation. Plaintiff's evidence indicated that she was hurt when she was thrown forward by the streetcar's jerking motion. In holding that the submission of the case on res ipsa loquitur was not error, the *Williams* court stated that the evidence did not demonstrate whether "the jerk was caused by negligent

application of the power or to a negligently maintained transmission system," therefore, no specific negligence was shown. *Id.* at 101. The City, in its application of the res ipsa loquitur rule, applies it in the same manner as did the defendant in *Bratton v. Sharp Enterprises, Inc.*, 552 S.W.2d 306 (Mo.App.1977). In that case the defendant argued that the evidence conclusively demonstrated that plaintiff's injuries were specifically caused by an overloaded crane and therefore the res ipsa submission was improper. The City similarly argues that the evidence in the instant case demonstrates that Brown's death was specifically caused by the discharge of Pool's gun. The City, like the defendant in *Bratton*, mistakes physical cause for legal cause. The physical cause of Brown's death is readily apparent but the specific conduct responsible for such physical cause of death is not. Plaintiff's evidence demonstrated the instrumentality used and the control of such instrumentality but did not demonstrate the specific negligence which resulted in the use of the instrumentality to cause Brown's death. Consequently plaintiff was properly allowed the res ipsa loquitur submission. *See Bratton*, supra at 313; *Belding v. St. Louis Public Service Co.*, 215 S.W.2d 506, 510 (Mo. banc 1948); *Semler v. Kansas City Public Service Co.*, 196 S.W.2d 197, 200 (Mo.1946).[1]

 In its final point the City claims that Instruction No. 5 defining negligence as "the failure to use that degree of care that a very careful and prudent person would use" was an erroneous submission because it imposed a higher degree of care upon the City than required by law. The City asserts that the proper standard of care required by one handling firearms is the care "than an ordinarily careful person would use under the same circumstances." Due to the dangers involved, there is no

---

1. In the argument portion of its third point the City states that the res ipsa submission was also erroneous because the evidence "did not create an inference of negligence, but instead, it showed the actions of Officer Pool were intentional." The City does not elaborate on this statement nor offer authority for this position. In any event, it is without merit. A party

seeking the benefit of res ipsa loquitur presumption need not exclude all other possible inferences from the evidence. The evidence must be sufficient to raise a reasonable inference of defendant's negligence. *Scott v. Club Exchange Corp.*, 560 S.W.2d 289, 293 (Mo.App. 1977).

doubt that an ordinarily careful person when handling firearms is required to exercise a very high degree of care. *White v. Bunn*, 145 S.W.2d 138, 140 (Mo.1940); *McLaughlin v. Marlatt*, 246 S.W. 548, 553 (Mo.1922); *Atchison v. Procise*, 24 S.W.2d 187, 190 (Mo.App.1930). The City's fourth point is without merit. The court submission of MAI 11.02 II was the only correct submission under the circumstances of the case.

Judgment affirmed.

SMITH, P. J., and SATZ, J., concur.