**Lelan Cecil HERN, Respondent,**

v.

**James A. HECKERT, Appellant.**

**No. WD 35144.**

Missouri Court of Appeals,
Western District.

Aug. 8, 1984.

Motion for Rehearing and/or Transfer to
Supreme Court Overruled
and Denied Oct. 2, 1984.

Application to Transfer Denied
Nov. 20, 1984.

R.E. Moulthrop, Bethany, for appellant.

Edward M. Manring, Albany, Jerold L. Drake, Grant City, for respondent.

Before KENNEDY, P.J., and NUGENT and BERREY, JJ.

KENNEDY, Presiding Judge.

This is an appeal by employer from a $20,000 judgment based upon the verdict in a jury trial, for injuries suffered by the plaintiff in an assault by defendant's employee.[1]

The employer defendant challenges the submissibility of the case upon the ground asserted by him that his employee was not acting within the scope of his employment and that he is therefore not liable to plaintiff under principles of respondeat superior.

We agree with the employer and reverse the judgment.

The facts are these:

Defendant Heckert was a contractor who was engaged in laying water lines for a rural water district in Worth County, Missouri. He also had a similar project under way near Pittsburg, Kansas, where his headquarters were. Defendant's employee John Sinclair was in charge of the Worth County project under broad authority to represent Heckert in dealings with the em-

---

**1.** There was also a verdict for $20,000 actual damages and $10,000 punitive damages against the employee, John Sinclair, but Sinclair has not appealed.

ployees and also with the owner water district. The record mentions no title, but his duties would correspond to those of a superintendent.

Plaintiff was the owner of a tractor and accessories which he operated in Heckert's employ in the water line projects. At the time of the assault, which was October 16, 1980, he was working at the Pittsburg project, although he had earlier worked on the Worth County project under the supervision of John Sinclair. The dispute which issued in the assault grew out of the latter.

The dispute was over a wage claim which plaintiff asserted on the Worth County project. Sinclair had withheld approval of plaintiff's pay on the ground that plaintiff was charging for too many hours. The dispute had continued over a considerable period of time and had involved more than one discussion between plaintiff and Sinclair. The plaintiff testified, however, that he had not discussed the matter with Sinclair since August, which was more than two months before the assault. Plaintiff had at one time appealed to Heckert, driving the 240-mile distance to Heckert's office in Pittsburg to confer with him, but Heckert had referred him back to Sinclair.

On the day of the assault, rain had halted both the Worth County and the Pittsburg projects. Plaintiff, working on the Pittsburg project, left the job there and drove back to Gentry, Missouri. His residence was located near Worth, Missouri, approximately seven or eight miles distant from Gentry. Arriving at Gentry in the afternoon he stopped at the Gentry Inn, a bar with pool tables. Plaintiff had formerly operated the bar. He went in and joined some friends and acquaintances seated around a table, and ordered beer.

Sinclair, as it happened, was also in the bar. He was playing pool in the back. Plaintiff himself testified he did not see Sinclair and did not know he was there. He first became aware of Sinclair's presence when Sinclair approached the table where he was sitting. Sinclair said, "You better get off my a_____", or "Either get

off my back or on it" (plaintiff himself testified only that Sinclair said "something", but he did not testify what his words were) and struck plaintiff on the head with the large end of the cue stick. The blow opened two gashes in plaintiff's scalp, one five inches in length and the other two and a half inches, which necessitated medical treatment. According to the medical testimony, the blow caused some hearing disability and recurring pain.

Sinclair's own testimony was that the plaintiff had repeatedly accosted him about the wage claim; had threatened him with "or else"; that threats had been relayed to him that he would "pay the bill or he had three days to live". Sinclair said he was nervous about the threats. On the day in question he said he approached plaintiff in the bar. He continued: "I walked over to him and said, 'Cecil, looks like we've got a problem we ought to solve.' He said, 'Yes, if I had a gun, I'd solve it right now.' And he started to get up and I swung the cue stick."[2]

Sinclair returned to his pool game, but left after the bartender ordered him out.

In its main features this case is like *Henderson v. LaClede Radio, Inc.*, 506 S.W.2d 434 (Mo.1974), which, as the latest pronouncement of our Supreme Court on the subject, is binding upon us. It requires a reversal of this case.

In *Henderson*, a salesman-collector for defendant had encountered plaintiff in an all-night restaurant at 4 o'clock a.m. and had assaulted him in an attempt to collect a $15 account. The court held that the plaintiff made no submissible case against the employer. *Id.* at 437.

■ The assault by Sinclair in the present case, occurring in a chance encounter in a bar, was unexpectable and unforeseeable by the employer. Sinclair's employment was not of a kind which could be expected to result in assaults. The RESTATEMENT (SECOND) of AGENCY

---

**2.** Self-defense was submitted to the jury but was rejected by them, as the verdict shows.

§ 245 (1957) and comment c (quoted in *Henderson*, 506 S.W.2d at 436) read thus:

Use of Force. A master is subject to liability for the intended tortious harm by a servant to the person or things of another by an act done in connection with the servant's employment, although the act was unauthorized, if the act was not unexpectable in view of the duties of the servant.

.  .  .  .  .

Comment c. Nature of employment. Whether or not an employment involves or is likely to lead to the use of force against the person of another is a question to be decided upon the facts of the individual case. To create liability for a battery by a servant upon a third person, the employment must be one which is likely to bring the servant into conflict with others. The making of contracts, or the compromise, settlement, or collection of accounts, does not ordinarily have this tendency. On the other hand, the employment of servants to guard or to recapture property, to take possession of land, or to deal with chattels which are in the possession of another, is likely to lead to altercations, and the master may become liable, in spite of instructions that no force shall be exerted against the person of the possessor.

Plaintiff, in an attempt to take this case outside *Henderson*, reminds us that the assault by Sinclair was not so outrageous as the assault by the employee in the *Henderson* case. That may be true, but we do not base our decision upon the outrageousness of Sinclair's assault. We base our decision instead upon the fact that it was outside the scope of Sinclair's employment and was not foreseeable or expectable by the employer. If the assault was outside the scope of Sinclair's employment, as we hold it was, it makes no difference whether it was outrageous or not. (On the other

hand, if the assault is otherwise within the scope of the employee's employment, the employer might still be exonerated because of the extremity and the outrageousness of the employee's action), *see Wellman v. Pacer Oil Company*, 504 S.W.2d 55, 59, 60 (Mo. banc 1973), *cert. denied*, 416 U.S. 961, 94 S.Ct. 1981, 40 L.Ed.2d 313 (1974).

Said the court in *Mansfield v. Smithie*, 615 S.W.2d 649, 653–54 (Mo.App.1981):

Whether or not an agent's use of force is within the scope of his employment is dependent upon many factors ... Of primary importance are the nature of principal's business, whether or not the employment will bring the agent into contact with the public and the likelihood his employment will involve the use of force ...; whether or not the agent acts within authorized hours and at an authorized place, ...; and whether or not the agent acts from a personal motive. (citations omitted).

We have already held that Sinclair's employment was not of a sort which might be expected to involve the use of force (unlike a servant whose employment is to guard or to recapture property, to take possession of land, or to deal with chattels which are in the possession of another, *see* RESTATEMENT (SECOND) of AGENCY § 245 and comment c (1957); *Mansfield v. Smithie*, 615 S.W.2d 649 (Mo.App.1981). Sinclair and the plaintiff met by chance at a bar, as did the plaintiff and his attacker in *Henderson*. The attack did not occur within working hours nor at any authorized place of employment. Furthermore, Sinclair's attack was apparently motivated by plaintiff's alleged harassment and threats, rather than by any purpose to promote defendant Heckert's business. The assault upon plaintiff would bring the controversy no nearer to settlement, *see Collette v. Rebori*, 107 Mo.App. 711, 82 S.W. 552, 555 (1904), quoted in *Henderson*, 506 S.W.2d at 436.[3]

---

**3.** *Contrast Brown v. Associated Dry Goods, Inc.*, 656 F.2d 306 (8th Cir.1981) where in an altercation over parking fees which a night janitor had the duty to collect, the maintenance man assaulted and injured the plaintiff. The assault

was held not to be so outrageous as to come within the models of *Henderson* and *Wellman*, nor was it "completely divorced from his proper tasks."

Plaintiff seems to argue that defendant Heckert afterwards ratified Sinclair's assault upon him. Plaintiff was asked whether he had had any conversation with Heckert concerning the incident after it occurred. Plaintiff replied that he had, in November or December after the assault, and that defendant "threatened to sue me or have me throwed in jail, gave me a cussing over the phone". The conversation was not further elaborated upon. We can find in this conversation no such thing as ratification, or any admission by Heckert that Sinclair was acting within the scope of his authority.

Judgment reversed.

All concur.