Linda Diane BUTLER, a minor, by and through Frieda J. Butler, her mother and next friend, Carl Butler and Frieda J. Butler, Plaintiffs-Appellants,

v.

CIRCULUS, INC., doing business as Laurel Haven School for Exceptional Children, Defendant-Respondent.

No. 38696.

Missouri Court of Appeals, St. Louis District, Division Three.

Oct. 11, 1977.

Ray E. White, Jr., Clayton, for plaintiffs-appellants.

Theodore D. Ponfil, Clayton, Evans & Dixon, Eugene Buckley, St. Louis, for defendant-respondent.

MILTON A. SAITZ, Special Judge.

Plaintiffs Linda Diane Butler (a minor who filed suit by and through her mother and next friend Frieda J. Butler and who will be referred to in this opinion simply as plaintiff), Carl Butler and Frieda J. Butler filed a petition against defendant Circulus, Inc., doing business as Laurel Haven School for Exceptional Children, claiming liability on the part of defendant for alleged physical and mental abuse and treatment of Linda Diane Butler while she was a "resident and student" at defendant's institution. After the filing of plaintiffs' sixth amended petition defendant filed a motion to dismiss urging (1) that the petition failed to state a claim upon which relief could be granted against defendant, (2) that the petition failed to comply with previous court orders made with respect to plaintiffs' pleadings, and (3) that the petition commingled allegations of assault and battery with allegations of·negligence in violation of a previous court order. Without stating any grounds for its decision, the trial court dismissed the sixth amended petition with prejudice. Plaintiffs appeal.

■ If any of the grounds asserted for dismissal are valid, the trial court's order dismissing the petition must be affirmed. *McClellan v. Highland Sales & Investment Co.*, 514 S.W.2d 371, 374[1] (Mo.App.1974). For plaintiffs to prevail we must find that no ground for dismissal was valid. We first consider whether the trial court's order is sustainable on the ground that the petition fails to state a cause of action against defendant.

In reviewing whether a petition states a cause of action "we are required to construe the petition favorably and to give the pleader the benefit of every reasonable and fair intendment in view of the facts alleged. If the pleader's allegations invoke principles of substantive law which may entitle the party to relief, the petition is not to be dismissed. If the facts pleaded and reasonable inferences to be drawn therefrom, looked at most favorably from the plaintiff's standpoint, show any ground upon which relief can be granted, the plaintiff has a right to proceed." *Euge v. Golden,* 551 S.W.2d 928, 931[4] (Mo.App.1977). And "if the petitioner's allegations invoke substantive principles of law which may entitle the pleader to relief, it will be sustained even though the cause of action is imperfectly or defectively stated." *Id.* at 932[8]. We set out the sixth amended petition in full.

### "SIXTH AMENDED PETITION
### COUNT I

Comes now plaintiff, Linda Diane Butler, a minor, by and through Frieda J. Butler, her mother and next friend, and for her cause of action states;

1. That Linda Diane Butler is a minor, mentally retarded, has no legally appointed guardian and brings this cause of action by and through her natural mother and duly appointed next friend, Frieda J. Butler.

2. That the defendant, Circulus, Inc., is a Missouri Corporation organized and authorized to do business in the State of Missouri and is licensed to do business under the Fictitious Name Act of the State of Missouri with the name of 'Laurel Haven School for Exceptional Children' and does operate a residential institution and facility which accepts mentally retarded persons for care, treatment, custody, training and education in Ballwin, Missouri which institution is licensed by the State of Missouri to provide care, treatment, custody, training and education of mentally retarded persons under the provision of Section 202.900 Revised Statutes of Missouri 1969 as amended 1972, formerly Section 202.831.

3. That on or about the 7th day of January, 1974, this plaintiff was admitted as a resident and student at the institution and facility operated by defendant in Ballwin, Missouri, and was a resident and student at said school until on or about May 3, 1974 for the purpose of defendant providing her care, treatment, training and education as a mentally retarded person.

4. Plaintiff states that during the time she was a resident and student of said institution and facility, defendant, by and through its employees and agents during times said employees and agents were providing her care, treatment, training and education as a mentally retarded person,

a) developed and carried into effect an improper program of behavior modification in respect to plaintiff which was based on physical and psychological punishment of plaintiff in an effort to cause plaintiff to obey orders and directions and as part of said program committed the following acts:

i) Routinely, on a daily basis, defendant's employee Kenneth A. Meyer twisted plaintiff's arms slapped plaintiff and sat on plaintiff in an effort to punish plaintiff and to cause plaintiff to obey orders and directions.

ii) Routinely, on a daily basis, defendant's employee, Kenneth A. Meyer, while acting in his capacity as supervisor of the Sheltered Workshop Division of defendant's institution ridiculed plaintiff, called plaintiff derogatory names, threatened plaintiff, used abusive language towards plaintiff and singled plaintiff our [sic] for special disciplinary actions by the employees of defendant's institution in an effort to punish plaintiff and cause plaintiff to obey orders and directions.

iii) On or about May 1, 1974 defendant's employee Kenneth A. Meyer struck plaintiff in the neck with his fist in an effort to punish plaintiff and to cause plaintiff to obey said employee's orders and directions.

iv) Routinely, on a daily basis, defendants [sic] employee Martha Frillman twisted plaintiff's arms and struck plaintiff in an effort to punish plaintiff and to cause plaintiff to obey orders and directions.

v) On one or more occasions between April 16, 1974 and May 1, 1974, defendant's employee Martha Frillman struck plaintiff about her body with a whip-like object in an effort to punish plaintiff and to cause plaintiff to obey orders and directions.

vi) Defendant's employee, Martha Frillman forced plaintiff to eat soap in an effort to punish plaintiff and cause plaintiff to obey said employee's orders and directions.

vii) On or about the 17th day of March 1974, defendant's employee, Pat Belt kicked plaintiff in the mouth in an effort to punish plaintiff and to cause plaintiff to obey said employee's orders and directions.

viii) On or about the 7th day of January, 1974 and during the month of April, 1974, defendants [sic] employee Katherine Cummings, kicked and kneed plaintiff in the shins, legs and back, wrestled with and sat on plaintiff in an effort to punish plaintiff and to cause plaintiff to obey said employee's orders and directions.

ix) On or about the 9th, 10th, 11th and 20th day of January 1974, the 4th day of March 1974, the 9th, 10th, 11th, 14th, 15th, 16th, 17th, 21st, 22nd, 23rd, 25th and 29th days of April 1974 and the 3rd day of May 1974, defendant by and through its employees and agents caused plaintiff to be placed in mechanical restraints without a physician's approval therefore in an effort to punish plaintiff, to cause plaintiff to obey the orders and directions of defendant's.

b) From the 7th day of January 1974 through the 3rd day of May 1974, defendant failed to provide plaintiff with the type of training and education which it knew or should have known was required if plaintiff was to reach her maximum ability to function as a mentally developed person and which failure it knew or should have known would result in the loss by plaintiff of her existing ability to function as a mentally retarded person.

5. Plaintiff states that the aforesaid occurrences were the direct and proximate result of the negligence and carelessness of defendant and defendant's employees and agents while acting within the scope and course of their employment by defendant in the following respects.

a) Defendant used improper methods of punishment in attempting to modify plaintiff's behavior.

b) As to the occurrences set forth in paragraphs 4(a)(i) through (ix) defendants employees and agents used excessive force under the circumstances then and there existing.

c) Defendant employed persons to provide care, treatment, training and education to plaintiff which it knew or should have known were unqualified to provide such care, treatment and education.

d) Defendant failed to supervise those persons it employed to provide care treatment, training and education to plaintiff so as to ascertain that said occurrences were taking place and so as to prevent their repetition.

e) Defendant failed to supervise the work of Kenneth A. Meyer so as to ascertain that he was providing inadequate and improper supervision and direction to other employees in the Sheltered Workshop Division of Defendant's institution.

f) Defendant failed to train its employees to provide proper care, treatment, training and education to plaintiff.

6. Plaintiff states that as a direct and proximate result of the aforesaid occurrences, she was caused to suffer severe burns, bruises, contusions, lacerations, scars, a child abuse syndrome, further mental retardation, mental illness and her nerves and entire nervous system are shocked, that plaintiff suffered, suffers

and will in the future suffer much pain of body, anguish of mind, mental illness, further mental retardation, cosmetic defects and all of her injuries are permanent, painful and progressive, all to plaintiff's damages in the sum of Five Hundred Thousand Dollars ($500,000.00).

7. Plaintiff states that all of the occurrences therein alleged were due as a direct and proximate result of the wanton, willful and reckless disregard and neglect of her safety and her well being.

WHEREFORE, plaintiff, Linda Diane Butler, prays actual damages in Count I, in the sum of Five Hundred Thousand Dollars ($500,000.00), and punitive damages in the sum of Two Hundred Thousand Dollars ($200,000.00), together with her costs herein expended.

## COUNT II

Plaintiffs Carl Butler and Frieda J. Butler, for their cause of action against this defendant state:

1. That at all times herein mentioned they were the parents and natural guardians of Linda Diane Butler and as such legally responsible for her medical and hospital necessities.

2. They incorporate herein by reference all of the allegations contained in Count I of this petition.

3. These plaintiffs state that as a direct and proximate result of the occurrences alleged in Count I and the injuries resulting to their minor daughter, they were caused to expend and/or obligate themselves in the approximate sum of Six Thousand Five Hundred Dollars ($6,500.00) for necessary medical, psychiatric and surgical care of the injuries of Linda Diane Butler and will in the future be required to expend and/or obligate themselves further for further medical, psychiatric, surgical and hospital care for her injuries all to their damages in the sum of One Hundred Thousand Dollars ($100,000.00).

WHEREFORE, plaintiffs, Carl Butler and Frieda J. Butler, pray damages in Count II in the sum of One Hundred Thousand Dollars ($100,000.00) together with her costs herein expended."

Plaintiffs claim the sixth amended petition states "a cause of action in negligence against defendant in that: a) it alleged the existence of a duty on the part of defendant to protect plaintiff from injury in that it stated that defendant operated a residential institution and facility which accepts mentally retarded persons and plaintiff was a resident at defendants [sic] institution and facility; b) it alleged a failure to perform this duty in that it stated that defendant carried on an improper program in respect to the modification of plaintiff's behavior and failed to provide her proper care, treatment, training and education and that these acts were caused by the negligence of defendant and defendant's servants acting within the scope and course of their employment and; c) it alleged injury to plaintiff from such failure." Other than pointing out that plaintiffs have the burden of producing a pleading which contains a short and plain statement of the facts showing they are entitled to damages from defendant, Rule 55.05, and that the petition seems to mingle together claims based on breach of contract, negligence and assaults and batteries, defendant does not brief or argue this issue. On this point defendant's motion to dismiss merely asserted that Counts I and II "of the sixth amended petition [fail] to state a claim upon which relief can be granted against defendant." Thus we do not know the aspects of plaintiffs' petition that defendant thinks are defective or in what ways they are thought to be defective. On the basis of plaintiffs' brief and our own independent research we analyze plaintiffs' sixth amended petition.

"A petition seeking damages for actionable negligence must allege 'ultimate facts' which, if proven, show (1) existence of a duty on the part of the defendant to protect plaintiff from injury, (2) failure of defendant to perform that duty, and (3) injury to the plaintiff resulting from such failure." *Scheibel v. Hillis,* 531 S.W.2d 285, 288[1] (Mo.banc 1976). A duty to exercise care may be imposed by entering into a contractual relationship or by common law under

the circumstances of a given case. *Id.* at 288[2]. "The reasonable anticipation of danger is an essential element of actionable negligence; and whether negligence exists in a particular situation depends on whether or not a reasonably prudent person would have anticipated danger and provided against it." *Id.* at 288[7]. "[A] reasonable man must anticipate and guard against the intentional or criminal misconduct of others where he has brought into contact or association with others a person whom he 'knows or should know to be peculiarly likely to commit intentional misconduct, under circumstances which afford a peculiar opportunity or temptation for such misconduct.'" *Id.* at 288[8], quoting Restatement (Second), Torts, Sec. 302B, comment e, note D. "With respect to the problem of proximate causation, if the foreseeable likelihood that a third person may act in a particular manner is one of the hazards which makes a person negligent, such an act of a third party, whether innocent, negligent, intentionally tortious or criminal, does not prevent that person from being liable for the harm caused thereby." *Id.* at 288[9].

■ From the allegations in Count I that plaintiff was a resident and student at defendant's licensed institution "for the purpose of defendant providing her care, treatment, training and education as a mentally retarded person," plaintiffs have established the existence of a duty on the part of defendant to protect plaintiff from injury. The failure of defendant to perform that duty is shown by the allegations that defendant failed to supervise its employees thus permitting them to physically and mentally abuse plaintiff as part of a behavior modification program. The petition also alleges injury proximately resulting from such failure. Given the behavior modification program based on punishment, the allegations show that it was reasonably foreseeable that defendant's employees would abuse plaintiff if the employees were not properly qualified, trained and supervised. *See, Scheibel v. Hillis,* 531 S.W.2d 285, 288[7–9] (Mo.banc 1976); *Porter v. Thompson,* 357 Mo. 31, 206 S.W.2d 509, 512[5] (1947) (employer could be liable for assault committed by employee if employer knew or should have known of employee's vicious propensities); *Schulte v. Graff,* 481 S.W.2d 596, 600, 602 (Mo.App.1972) (employer could be liable if plaintiff showed employee was unqualified or not properly trained or supervised); *Priest v. F. W. Woolworth Five & Ten Cent Store,* 228 Mo.App. 23, 62 S.W.2d 926, 928[4] (1933) (employer could be liable for unauthorized act of employee in bending customer backwards over counter if plaintiff showed employer failed to exercise ordinary care in employing a proper servant). *See generally,* 6 Am.Jur.2d, Assault & Battery § 134, pp. 113–114; 53 Am.Jur.2d, Master and Servant § 422, pp. 435–38; 57 C.J.S. Master and Servant § 559, pp. 270–77. Count I states a cause of action against defendant in negligence.

■ Furthermore, we believe that Count I states another valid theory of liability against defendant. This is on the basis of vicarious liability for the use of excessive force (intentional assaults and batteries) by defendant's employees acting within the scope of their employment. By alleging that defendant's employees beat and struck plaintiff while plaintiff was at the institution "in an effort to punish plaintiff and cause plaintiff to obey orders and directions," plaintiffs have shown that the employees were engaged in and attempting to further the master's business of maintaining order and discipline at the institution. *See, Smothers v. Welch & Co. House Furnishing Co.,* 310 Mo. 144, 274 S.W. 678, 679[1, 2] (1925) (store employee who attempted to have sexual intercourse with customer not acting within scope of employment but was pursuing his own ends); *Smith v. Lannert,* 429 S.W.2d 8, 14–15[9–10] (Mo.App.1968) (jury question on whether store manager's action in spanking an employee for disobeying an order to return to work was within the scope of his employment); *Young v. Sinclair Refining Co.,* 92 S.W.2d 995, 1001–02[9] (Mo.App.1936) (employee's act of throwing hammer at boy to keep him away from newly poured concrete within the scope of his employment). *See also,* Restatement of Agency 2d, § 245.

Further, these alleged actions are not the kind of unforeseeable outrageous, excessively violent or criminal conduct which must be said, as a matter of law, not to be within the scope of employment. *See, Wellman v. Pacer Oil Company,* 504 S.W.2d 55, 58 (Mo.banc 1973), *cert. denied,* 416 U.S. 961, 94 S.Ct. 1981, 40 L.Ed.2d 313 (1974) (act of gas station employee shooting customer held not within scope of employment as a matter of law); *Henderson v. Laclede Radio Inc.,* 506 S.W.2d 434, 437[2] (Mo.1974) (act of beating and kicking debtor over $15 debt at chance meeting at 4 a.m. not within scope of employment). In view of the nature of defendant's business and the duties of the employees, it appears from plaintiffs' allegations that the excessive force allegedly used by the employees was foreseeable, even though this amount of force may have been unauthorized.

Count I states a cause of action on two possible grounds. Count II, which incorporates by reference all of the allegations of Count I, and which claims damages to plaintiff's parents for past and future medical expenses resulting from "the occurrences alleged in Count I," also states a cause of action against defendant.

The other possible ground for affirming the lower court judgment dismissing the sixth amended petition with prejudice is

that plaintiffs failed to comply with one or more court orders. We consider the last two grounds asserted for dismissal together.

■ The fifth and last trial court order dismissed plaintiffs' sixth amended petition with prejudice. The first four are orders defendant claims plaintiffs did not comply with. These orders either granted motions to strike pleadings or to make them more definite or dismissed parts of petitions with leave to amend. Rule 67.02[1] and 55.27(d)[2] authorize dismissals for failure to follow court orders. The decision of whether pleadings should be dismissed with prejudice for failure to follow court orders appears to be a matter left to the sound discretion of the trial court so that on review an appellate court is to determine whether the trial court abused its discretion.[3]

Defendant claims the trial court acted within its discretion in dismissing the petition following plaintiffs' "refusal" to comply with four court orders. Plaintiffs claim they made a good faith attempt to comply with all orders. These orders must be considered in the context in which they were made.

Prior to the first court order in this case plaintiffs had filed their original petition

---

1. Rule 67.02 provides in part:
   "For failure of the plaintiff to prosecute or to comply with these Rules or any order of the court, a defendant may move for dismissal of a civil action or of any claims against him." *See also,* § 510.140 RSMo. 1969.

2. Rule 55.27(d) provides in part:
   "If the motion [for a more definite statement] is granted and the order of the court is not obeyed within 10 days after notice of the order, or within such other time as the court may fix, the court may strike the pleading to which the motion was directed, or make such order as it deems just." *See also,* § 509.310 RSMo. 1969.

3. The decision to dismiss for failure to prosecute under Rule 67.02 is a discretionary one with the trial court. *Shirrell v. Missouri Edison Company,* 535 S.W.2d 446, 448[1] (Mo.banc 1976); *State ex rel. State Highway Commission v. Manley,* 549 S.W.2d 533, 534[1] (Mo.App. 1977). The decision to dismiss for failure to comply with court orders under Rule 67.02 should likewise be a matter for trial court dis-

cretion. This is the standard under Fed.Rule Civ.Proc. 41(b) (which rule in pertinent part, is virtually identical to Missouri Rule 67.02). *Moore v. St. Louis Music Supply Company, Inc.,* 539 F.2d 1191, 1193[1] (8th Cir. 1976); *Asociacion de Empleados del Instituto de Cultura Puertorriquena v. Morales,* 538 F.2d 915, 916[1] (1st Cir. 1976); *Fendler v. Westgate California Corp.,* 527 F.2d 1168, 1170[2] (9th Cir. 1975); 15 A.L.R.Fed. 407, 420–22, § 6. The decision to dismiss for failure to make a pleading more definite under Rule 55.27(d) is discretionary with the trial court. *See, Einhaus v. O. Ames Co.,* 547 S.W.2d 821, 826[7] (Mo.App. 1976). *But see, Gates v. Tauchen,* 497 S.W.2d 183 (Mo.1973) (no standard stated); *George Kropp & Associates, Inc. v. Schneider,* 363 S.W.2d 58 (Mo.App.1962) (no standard stated). *See generally,* Note, *Involuntary Dismissal for Disobedience or Delay: The Plaintiff's Plight,* 3 U.Chi.L.Rev. 922 (1967) (good discussion of alternative sanctions for violations of court orders).

(on May 10, 1974), their first amended petition and their second amended petition. The second amended petition consisted of five counts. Following defendant's motion to strike or to dismiss the second amended petition, the trial court made its first order in the case as follows: "Deft's motion to strike portions of Count I which are repetitious of allegations in Count III and IV called, heard and sustained." Within the ten days allowed by the trial court plaintiffs filed their third amended petition. Count I of this petition is similar to the previous Count I but it omitted any mention of twisting of limbs and being placed in restraints, presumably because these were the matters which had been stricken from Count I of the previous petition by the first trial court order. The remaining four counts were virtually identical to the last four counts of the previous petition.

After defendant filed a motion to strike, an alternative motion for a more definite statement and a motion to dismiss the third amended petition on the ground that no count stated a cause of action against defendant, the trial court issued its second order in the case. This order sustained defendant's motion to dismiss as to Counts I, II, IV and V and overruled defendant's motion to dismiss as to Count III. Plaintiffs were granted twenty days in which to file an amended petition.

Plaintiffs' fourth amended petition, filed within the allotted time, again consisted of five counts. Counts I, II and V were virtually identical to the same numbered counts in the third amended petition. Count III added the allegation that the striking, kicking, whipping, and slapping, etc. of plaintiff by four named employees was "in violation of Section 202.900 Revised Statutes of Missouri 1969 as amended 1972 and Regulations 0503, 0503.1, 0549, and R0599 promulgated thereunder". Count IV asserted that the restraint of plaintiff by the use of straps applied to her arms and legs was a "violation of her right to freedom of movement" and alleged that putting her under restraint was "in violation of Sections 202.843 Revised Statutes of Missouri 1969 and Section 202.900 Revised Statutes of Missouri 1969 as amended 1972 and Regulations 0503, 0503.1, R059.3 promulgated thereunder." This count did not allege that plaintiff had been placed alone in a locked room as the previous Count IV had.

The trial court's third order granted defendant's motion for a more definite statement as to Count I of this petition. This motion had requested the court to order plaintiffs to state, with respect to paragraph 5(a) of Count I, "the specific respects in which defendant failed to adequately supervise or control the care of plaintiff" and to specify, with respect to paragraph 5(c), "the specific regulation which defendant allegedly violated by each omission that is alleged, in other words plaintiff should be required to allege which regulation, of the many mentioned, defendant allegedly violated by its alleged failure to examine plaintiff, which regulation defendant allegedly violated by its alleged failure to test plaintiff, etc." The third order also overruled defendant's motions to dismiss Counts I and II. The motion to dismiss Count IV was sustained and the motion to dismiss Count V was "sustained as to reallegations of Count IV, and overruled in all other respects." Plaintiff was granted ten days to file an amended petition.

Within the allotted time plaintiffs filed their fifth amended petition. In Count I of this petition plaintiffs expanded on paragraph 5(a) of Count I of the previous petition by including about three additional pages of statements of how defendant allegedly "failed to adequately supervise or control the care treatment, training and education of plaintiff." For example plaintiffs alleged that defendant failed to adequately investigate injuries to students, failed to supply necessary materials, and failed to review records kept regarding the administration of drugs "to ascertain that drugs were being administered to plaintiff in improper amounts at improper times." Also in Count I of the fifth amended petition plaintiff expanded on paragraph 5(c) of Count I of the previous petition by listing regulations allegedly violated by various alleged omissions of defendant. This expand-

ed section consumes more than five pages of the transcript and includes such allegations as not affording plaintiff individual instruction in violation of Regulation 0523, failing to keep records "which provided for planning and continuous evaluation of plaintiff's program in violation of Regulation 0533," denying plaintiff the right to attend religious services in violation of Regulation 0546, failing "to serve plaintiff a nourishing, well balanced diet in that her diet was deficient in meat and fresh fruits and of insufficient quantity to maintain her weight, [failing] to make provision for evening snacks in violation of Regulation R0564.2 and R0564.3," and failing "to foster behavior that maximizes the human qualities of plaintiff, increases her complexity and enhances her ability to cope with her environment in violation of Regulation 0543 but instead instituted a behavior modification program based on principles of punishment and aversion therapy which caused her to regress as a human being and develop characteristics of a wild animal." Count II of the fifth amended petition is similar to the previous Count II. It sought punitive damages claiming the occurrences in Count I were due to defendant's "wanton, willful and reckless disregard and neglect of [plaintiff's] safety and the safety of others . . . and her right to a positive program of treatment on the part of the defendant, its agents, servants and employees." Count III is substantially the same as the previous Count V. It is a claim on behalf of Linda's parents for past and future medical expenditures. The previous Counts III (which had claimed that plaintiff was struck and kicked, etc. by defendant's employees) and IV (which had alleged that plaintiff had been restrained by straps around her arms and limbs) were not included in the fifth amended petition, but the allegations contained in these counts were included in Count I under the abuses suffered by plaintiff while at the school.

After defendant filed motions to dismiss, to strike and for a more definite statement, the trial court made its fourth ruling in the case. In this ruling the court overruled defendant's motion to dismiss but defend-

ant's motion to strike was sustained, the court stating with respect to each count that "those portions of plaintiff's petition are hereby stricken as prayed in defendant's motion to strike." With respect to Count I, the motion to strike, referred to in the court order, had requested the deletion of the allegations of paragraph 5(a) which had been added to the fifth amended petition in an apparent attempt to comply with the court order commanding plaintiffs to make the previous paragraph 5(a) more specific. The ground asserted for this order was that these "allegations are so broad that they will permit the introduction of evidence totally unrelated to plaintiff's claim of damage." For basically the same reason the motion had requested the deletion of the allegations which had been added to the previous paragraph 5(c) (now 5(d)) in an apparent attempt to comply with the court order requiring plaintiffs to make the previous paragraph 5(c) more specific. The motion also requested the phrase "and unknown other persons" to be stricken from Count I. It further requested the deletion of paragraphs 5(e), 5(f) and 5(g) from Count I "for the reason that said allegations are unrelated to plaintiffs' claim of damage and will permit plaintiff to introduce evidence wholly unrelated to the nature of plaintiff's claim for damages." These paragraphs were a partial listing of the ways plaintiffs claimed defendant was negligent in allowing plaintiff to be abused. As to Count II the motion to strike had requested (and the court so ordered) the deletion of the phrases "and the safety of others," "the well being of others" and "and her right to a positive program of treatment on the part of the defendant, its agents, servants and employees."

The last part of the fourth court order stated: "In regard to defendant's motion for more definite statement, previously heard and taken as submitted, is hereby sustained ad [sic] to those portions of Plaintiff's Fifth Amended Petition; not stricken herein, with leave to the plaintiff to amend within twenty (20) days as to those portions not stricken." The motion for a more defi-

nite statement, referred to in this order, had requested more specificity in regard to stating in Count I dates when various acts allegedly occurred, "[s]tating in separate counts the allegations of negligent acts and the allegations of assaults and intentional acts contained in Count I" and "[s]tating more specifically what plaintiffs are referring to by use of the term 'occurrences' in paragraph 2 of Count II."

Within the time allowed by the trial court, plaintiffs filed their sixth amended petition. This petition is set out in full, *supra*. To this petition, the trial court sustained defendant's motion to dismiss and the cause was dismissed with prejudice. We now consider the extent of plaintiffs' compliance with the four court orders in question.

■ The first court order struck from Count I allegations which had been repeated in Courts III and IV. Even if plaintiffs were required to do something to obey this order, plaintiffs did so by omitting from Count I of their next (third amended) petition any mention of allegations found in Counts III and IV. The second court order simply sustained motions to dismiss with leave to amend. By timely filing another petition, plaintiffs complied with this court order. One part of the third court order dismissed parts of the fourth amended petition with leave to amend. By timely filing their fifth amended petition, plaintiffs complied with this part of the third order. The other part of this order required Count I of plaintiffs' next petition to be more specific in several respects. Plaintiffs complied with this part of the order by detailing and expanding on the parts of Count I covered by the order. Plaintiffs fully complied with the first three court orders.

The fourth court order was the more complex. One part of this order overruled motions to dismiss. Obviously plaintiffs were not required to do anything to comply with this part of the order. Another part of this order sustained motions to strike and stated that those parts of the petition which defendant had requested stricken "are hereby stricken." Some of the matters stricken

from the fifth amended petition were not included in plaintiffs' sixth amended petition but some of these matters were again included in the sixth. The final part of this order granted defendant's motion for a more definite statement as to the nonstricken portions of the fifth amended petition. This part of the order required plaintiffs to do several things. First, it required them to state "the dates that the various acts alleged in Count I were alleged to have been committed." As can be seen from paragraph 4(a) of Count I of the sixth amended petition, plaintiffs did specify some of the dates on which certain alleged events took place. Other events were alleged to have occurred "[r]outinely, on a daily basis." The allegation about employee Martha Frillman forcing plaintiff to eat soap (4(a)(vi)) does not state a date when this alleged event occurred. In their brief, plaintiffs state that the date of this event is unknown. Second, this part of the order required plaintiffs to state "more specifically what plaintiffs are referring to by use of the term 'occurrence' in paragraph 2 of Count II." In the sixth amended petition the allegations of the prior Count II are not listed in a separate count. Rather, these allegations were put in paragraph 7 of Count I of the sixth amended petition. In this paragraph plaintiffs did not elaborate on the meaning of "occurrence." We note that the same term appeared in paragraphs 5 and 6 of Count I of the fifth amended petition without objection from defendant and that this term also appears in paragraphs 5 and 6 of Count I of the sixth amended petition. Third, this part of the order required plaintiffs to state "in separate counts the allegations of negligent acts and the allegations of assaults and intentional acts contained in Count I." As is evident from a reading of Count I of the sixth amended petition, plaintiffs did not separate allegations of negligence and intentional torts into separate counts. Instead, plaintiffs retained their previous theory of the case which was that plaintiff had been intentionally abused by staff and other students as a result of defendant's negligence in failing adequately to supervise and

control, etc. its employees and program at the school.

It appears that plaintiffs could be accused of violating the fourth court order in only four respects. These are: (1) including in the sixth amended petition allegations which had been stricken from the fifth amended petition; (2) not stating the date of one event; (3) not specifying the meaning of "occurrence"; and (4) not stating in separate counts allegations of negligent acts and allegations of assaults and intentional acts.

When matters are ordered stricken from pleadings, they are simply deleted by the court order. Such an order does not require or direct the pleader to do anything; he may include the stricken allegations in an amended pleading. *Compare,* Rule 55.27(d) and § 509.310 RSMo 1969 (if pleading is not made more definite following court order to do so, "the court may strike the pleadings to which the motion was directed, or make such order as it deems just") *with* Rule 55.27(e) ("court may order stricken from any pleading any insufficient defense or any redundant, immaterial, impertinent, or scandalous matter"). By including allegations stricken from the fifth amended petition in their sixth amended petition plaintiffs did not violate any court order.

The other violations of court orders involve plaintiffs' failure to make parts of their sixth amended petition more definite. Whether these events are measured by the specific rule, Rule 55.27(d) (§ 509.310 RSMo 1969), or the general rule, Rule 67.02 (§ 510.140 RSMo 1969), either of which could apply here, we do not believe that dismissal of plaintiffs' petition is sustainable on the grounds of plaintiffs' failure to make these parts of their petition more specific. It is an abuse of discretion to order a plaintiff to make a petition more definite when the petition already alleges sufficient facts to appraise the defendant of the acts with which he is charged so that he can prepare a responsive pleading. *Einhaus v. O. Ames Co.,* 547 S.W.2d 821, 823 (Mo. App.1976). *See, Gates v. Tauchen,* 497

S.W.2d 183, 185[2] (Mo.1973); *Sansone v. National Food Stores, Inc.,* 352 S.W.2d 375, 378–79[6] (Mo.App.1961). Further, a dismissal for failure to follow a court order presupposes an order lawfully made. *Healer v. Kansas City Public Service Co.,* 251 S.W.2d 66, 68[5] (Mo.1952). When plaintiffs claim they do not know the date of one event, they should not be penalized for failure to specify the date particularly because it appears that this part of the petition is sufficient to enable defendant to answer. *See,* Wright & Miller, Federal Practice and Procedure § 1379, p. 777. Although plaintiffs did not define the term "occurrence" in paragraph 7 of their sixth amended petition, defendant must have known what was meant by this term because the same word was used two other times in Count I of the fifth amended petition without objection from defendant and this term was used two more times in Count I of the sixth amended petition other than in paragraph 7. This term obviously refers to the events enumerated in paragraph 4 of the sixth amended petition.

Finally, even though plaintiffs did not state in separate counts the allegations of negligent acts and allegations of assaults and intentional acts as required by the court order, we do not believe under the circumstances of this case that this failure warranted the harsh remedy of dismissal of the entire petition with prejudice. The purpose of the rules of civil procedure is to secure a just determination of every civil proceeding. Rule 41.03; *Stacy v. Department of Public Health and Welfare,* 468 S.W.2d 651, 654[2] (Mo.App.1971); *Associated Grocers' Company of St. Louis v. Crowe,* 389 S.W.2d 395, 399[4] (Mo.App.1965). "All pleadings shall be so construed as to do substantial justice." Rule 55.24. A dismissal with prejudice operates as an adjudication on the merits, *Max v. Spaeth,* 349 S.W.2d 1, 3[1] (Mo.1961), and forever "bars the assertion of the same cause of action or claim against the same party." Rule 67.03. Plaintiff might have thought that they need not comply with this order for two reasons. First, plaintiffs might have be-

lieved the order was invalid because Rule 55.10 (§ 509.110 RSMo 1969) states that "[a] party may set forth two or more statements of a claim . . . alternatively or hypothetically, *either in one count . . . or in separate counts . . .*" (emphasis added).[4] We do not believe that this order was invalid on this ground; such an order must ordinarily be obeyed. But confusion in this regard is understandable. Second, the order directing plaintiffs to state "in separate counts the allegations of negligent acts and the allegations of assaults and intentional acts" is not entirely clear. Plaintiffs might have believed that strict compliance with the order (complete separation of the allegations of the intentional acts and negligent acts) would have resulted in neither count stating a cause of action against defendant in negligence. This is because allegations of both types of acts are necessary to state a cause of action in negligence in this case. If the court order is read to mean that plaintiffs should state their theory of defendant's liability on the basis of negligence in one count (which count could include allegations of defendant's negligent acts as well as the employees' intentional acts) and state their theory of defendant's liability on the basis of respondeat superior in another count (which would only include allegations of the employees' intentional acts), then the order is proper and reasonable and is one with which plaintiffs should have complied. But because the order itself and the necessity for compliance were not entirely clear, we believe that plaintiffs' noncompliance was excusable. The trial court's action in dismissing plaintiffs' petition with prejudice for failure to follow this order was an abuse of discretion. The dismissal of the petition is not sustainable on this ground.

One last issue must be discussed. Plaintiffs claim the trial court erred in striking portions of their fifth amended petition. Defendant counters by asserting that plaintiffs cannot raise this issue because they abandoned the allegations of their fifth amended petition when they filed their sixth amended petition. Although the cases support this abandonment theory, *Laux v. Motor Carriers Council of St. Louis, Inc.,* 499 S.W.2d 805, 809[8] (Mo. 1973); *Weir v. Brune,* 364 Mo. 415, 256 S.W.2d 810, 811[1, 2] (1953); *Lightfoot v. Jennings,* 363 Mo. 878, 254 S.W.2d 596, 597[3] (1953) (former petitions not before court even though included in transcript), plaintiffs claim the rule of abandonment should not apply here because they did not *voluntarily* abandon their prior allegations in that these disputed and stricken allegations were omitted from the sixth amended petition only in an attempt to comply with the court order striking the allegations. But, as noted earlier, when matters are ordered stricken from pleadings, they are deleted by the court order and no further action by the pleader is necessary. *Compare,* Rule 55.27(d) and § 509.310 RSMo 1969 (if pleading is not made more definite following court order to do so, "the court may strike the pleadings to which the motion was directed, or make such order as it deems just") *with* Rule 55.27(e) ("court may order stricken from any pleading any insufficient defense or any redundant, immaterial, impertinent, or scandalous matter"). Thus, even if voluntariness is required, plaintiffs did voluntarily abandon the allegations of their fifth amended petition when they filed their sixth amended petition, because it was not necessary to file another amended petition at all and if one were filed it could have included allegations

4. Apparently in direct conflict with the provisions of this rule and statute (the statute has remained unchanged since at least 1943) several cases state that it is bad pleading to join two theories of recovery in one count. *Rotert v. Peabody Coal Company,* 513 S.W.2d 667, 676[4] (Mo.App.1974); *King v. Morris,* 315 S.W.2d 497, 498[4] (Mo.App.1958); *Kearns v. Sparks,* 260 S.W.2d 353, 358[5] (Mo.App.1953). But the force of these statements in these cases

is undercut by the absence of any mention of Rule 55.10 or § 509.110 in either *Kearns* or *King* and the fact that in *Rotert,* the court held that separating plaintiffs' claims into separate counts was proper because the damage occurred at different times, and that had plaintiffs submitted the two different theories of their claim in one count this "*possibly* could have run afoul of what was said in *King v. Morris* . . . ." (emphasis added).

which had been stricken from the previous petition. If plaintiffs desired appellate review of the trial court order striking parts of their fifth amended petition, they could have stood by those pleadings and raised the propriety of the strike order on an appeal from a final judgment rendered as to those pleadings [5] or filed an amended petition which included the previously stricken allegations.

The trial court's judgment is reversed and remanded.

SMITH, P. J., and McMILLIAN and GUNN, JJ., and GEORGE W. CLOYD, Special Judge, concur.

---

**5.** If plaintiffs lost at trial, they could appeal the whole case including the validity of the strike orders. *See, Emery Bird Thayer Dry Goods Co. v. J. C. Nichols Co.,* 427 S.W.2d 492, 494[1] (Mo.banc 1968); *Davis v. Davis,* 284 S.W.2d 575, 578[4] (Mo.1955); *State ex rel. Marcum v. Sappington,* 261 S.W.2d 385, 390–91[5] (Mo. App.1953). If plaintiffs won a verdict and judgment at trial they could still appeal the validity of the strike orders because they would be aggrieved by the judgment in that they were not afforded all the relief they had requested. *See, Page v. Hamilton,* 329 S.W.2d 758, 762[2–4] (Mo.1959); *Reed Schmidt and Associates, Inc. v. Carafiol Furniture Company,* 469 S.W.2d 876, 879[5] (Mo.App.1971); *Eissler v. Eissler,* 468 S.W.2d 217, 218[1, 2] (Mo.App.1971).

*State ex rel. Broglin v. Nangle,* 510 S.W.2d 699 (Mo.banc 1974) reviewed the propriety of a strike order in a mandamus proceeding prior to the final judgment in the case. This case has been sharply criticized. Tuchler, *Discretionary Interlocutory Review in Missouri: Judicial Abuse of the Writ?,* 40 *Mo.L.Rev.* 577, 592–93 (1975).