Michael A. SMITH, et al., Plaintiffs,

v.

**GOODYEAR TIRE & RUBBER COMPANY, INC.,**
Defendant.

No. 91–0984–CV–W–9.

United States District Court,
W.D. Missouri,
Western Division.

June 7, 1994.

Sally R. Surridge, Karl Zobrist, Blackwell, Sanders, Matheny, Weary & Lombardi, Sylvester James, Jr., Kenner & James, P.C., Kansas City, MO, for plaintiffs.

Charles A. Blackmar, Gordon D. Gee, Seigfreid, Bingham, Levy, Selzer & Gee, Kansas City, MO, for defendant.

*ORDER DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AS TO COUNTS III, IV, V AND VIII OF PLAINTIFFS' AMENDED COMPLAINT AND GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AS TO COUNTS VI AND IX OF PLAINTIFFS' AMENDED COMPLAINT*

BARTLETT, District Judge.

Plaintiffs have filed a ten-count Amended Complaint against Goodyear Tire and Rubber Company, Inc. (Goodyear). All of plaintiffs' claims arise out of the franchise relationship between Goodyear and Center City Automotive, Inc. d/b/a Linwood Tire and Auto Center (Linwood Tire) where Linwood Tire operated a Goodyear franchise in Kansas City, Missouri, from June 1, 1986, through the beginning of February 1991.

Defendant moves for summary judgment on Counts III, IV, V, VI, VIII and IX of plaintiffs' Amended Complaint.

## I. *Facts*

The following facts taken from the parties' factual presentations in support of and in opposition to the motion are undisputed.

On May 15, 1986, Linwood Tire entered into a Goodyear Tire Center Service Mark License and Franchise Agreement with Goodyear. Michael Smith was the owner and 100% shareholder of Linwood Tire. Goodyear required $70,000 investment capital before it would agree to authorize an individual to operate a Goodyear franchise. Smith borrowed $31,500 from Rubber City Capital Corporation to reach the $70,000 required.

Rubber City Capital Corporation was a wholly owned subsidiary of Goodyear Tire and Rubber Company from 1986 through 1991. "The role of Rubber City was to serve in a partnership between corporate America and the Federal Government under the supervision of the Small Business Administration to provide financing to qualified minorities to be in business with Goodyear." Pl. Br.Facts at ¶ 29. "Rubber City's purpose was to provide financial and moral support to minority businesses." *Id.* ¶ 30.

Ken Nowak was employed by Goodyear as a Dealer Development Counselor. Nowak was the Counselor for Linwood Tire as well as for another franchisee, George Muzyka. "By three letters, two of which were dated November 5, 1986, and one dated January 29, 1987, Smith complained to Goodyear about Nowak's competence in serving as Regional Dealer Development Counselor." Def. Br.Facts at ¶ 4.

Linwood Tire was awarded the 1987 government tire contract with the City of Kansas City. Nowak told Linwood Tire that it would receive credit for government tire sales as soon as Goodyear received Linwood Tire's invoices. In order to receive credit for tires sold to government entities, representatives of Goodyear told Smith to make copies of all original invoices on government sales and send them to Goodyear's office in Akron, Ohio. Nowak offered to copy Linwood Tire's original invoices and send the copies to Goodyear. Later Nowak told Smith that the original invoices had been forwarded to Goodyear's government tire department in Akron.

Instead of sending the invoices to Goodyear, Nowak took the invoices to Muzyka's Goodyear store in Lenexa and threw many of them in the trash. Nowak also provided information about Linwood Tire's financial condition to Muzyka. Muzyka stated at his deposition that Nowak was "teed off" at Smith.

## II. *Discussion*

### A. *Counts III IV, V, and VIII*

Plaintiffs seek damages for fraudulent misrepresentation in Count III; for conversion in Count IV; for trespass to chattels in Count V; and for tortious interference with business relationships in Count VIII.

Defendant moves for summary judgment on Counts IV and V and on those portions of

Counts III and VIII which seek to hold defendant liable for intentional torts committed by defendant's employee, Ken Nowak. Defendant argues that under the doctrine of respondeat superior an employer cannot be held liable for the intentional wrongdoing of an employee when the employee is motivated solely by personal motives and is not engaged in the business of the employer.

Plaintiffs respond that defendant's characterization of Nowak's motives in committing his intentional acts against plaintiffs is subject to dispute and that a jury could believe that Nowak had other motives in committing the acts, including motions directly related to his employment with defendant. Furthermore, plaintiffs argue that whether Nowak committed the acts for personal reasons is irrelevant where "'the masters business actuates the servant to any appreciable extent.' It is enough that these acts were committed by Nowak at a time when he was expected to be acting within the scope of that employment and was using the status authority and tools granted him [by] Goodyear to carry out these deeds." Pl.Br. at 8–9 (quoting *Doe v. B.P.S. Guard Services Inc.*, 945 F.2d 1422, 1425 (8th Cir.1991)).

■ Under the doctrine of respondeat superior "a master is liable for the torts of his servant which are committed within the scope of employment." *Carter v. Willert Home Products, Inc.*, 714 S.W.2d 506, 511 (Mo.1986) (en banc) (quoting *Wagstaff v. City of Maplewood*, 615 S.W.2d 608, 610 (Mo.Ct. App.1981). "[A]n act is within the course of employment if (1) it is something fairly and naturally incident to the business and (2), although mistakenly or ill advisedly done, it is done while engaged in the master's business, and did not arise wholly from some external, independent or personal motive to do the act upon his own account." *Maryland Cas. Co. v. Huger*, 728 S.W.2d 574, 579 (Mo. Ct.App.1987) (quoting *Bova v. St. Louis Public Service Co.*, 316 S.W.2d 140 (Mo.Ct.App. 1958); *Maniaci v. Interurban Express Co.*, 266 Mo. 633, 182 S.W. 981 (1916)).

As stated in *Doe by Doe v. B.P.S. Guard Services, Inc.*, 945 F.2d 1422, 1425 (8th Cir. 1991):

Under Missouri law, there can be no respondeat superior liability if the employee was acting entirely for his own purposes:

The principle of respondeat superior applies only when what is complained of was done in the course of employment. The principal is responsible, not because the servant has acted in his name or under the color of his employment, but *because the servant was actually engaged in and about his business, and carrying out his purposes....* But if [the employer's] business is done, or is taking care of itself, and his servant, not being engaged in it, not concerned about it, but impelled by motives that are wholly personal to him-self, and simply to gratify his own feeling[s] ... commits an [act] ... that has and can have *no tendency to promote any purpose in which the principal is interested ... then the wrong is the purely personal wrong of the servant,* for which he, and he alone is responsible (emphasis in original) (quoting *Haehl v. Wabash R. Co.* [119 Mo. 325], 24 S.W. 737, 740 (Mo.1893)) (emphasis added), (quoted in MAI 3d 13.02) (Committee's Comment (1975 New)) and *overruled on other grounds, Wellman v. Pacer Oil Co.*, 504 S.W.2d 55 (Mo.), *cert. denied,* 416 U.S. 961 [94 S.Ct. 1981, 40 L.Ed.2d 313] (1974).

On the other hand, a servant may act within the scope of his employment even though pursuing his own ends, if he is at the same time doing his master's business. Restatement (Second) of Agency makes this distinction in sections 235 and 236. Under section 235, 'An act of a servant is not within the scope of employment if it is done with no intention to perform it as a part of or incident to a service on account of which he is employed.' Under Section 236, 'Conduct may be within the scope of employment, although done *in part* to serve the purposes of the servant....' (emphasis added). In fact the servant's predominant motive may be to benefit him-self, *id.* at comment b, but there can be respondeat superior as long as 'the master's business actuates the servant to any appreciable extent.' *Id. See Foster v.*

*Campbell* [355 Mo. 349], 196 S.W.2d 147, 150 (Mo.1946) (citing same principle from the first Restatement of Agency) As an evidentiary matter, there is an *inference* that if a 'servant does the very act directed, or does the kind of act which he is authorized to perform within working hours and at an authorized place,' he is acting within the scope of employment. Section 235, comment a.

■ Thus, in Missouri, in order for there to be respondeat superior liability for the acts of an employee, the employer's business must, at least in part, motivate the employee to act or the employee's act must have a "tendency to promote any purpose in which the employer is interested. . . ." *Doe by Doe,* 945 F.2d at 1425 (citation omitted).

Defendant argues that Nowak had two reasons for sabotaging plaintiffs' efforts to succeed in business. First, defendant states that Nowak acted out a desire for revenge and spite to get back at plaintiffs for plaintiffs' complaints to Goodyear's management. Second, defendant contends that because Nowak was unhappy with his employment at Goodyear, Nowak tried to put plaintiffs out of business so that another franchisee, George Muzyka, could take over plaintiffs' location and hire Nowak. Defendant supports these reasons with deposition testimony from George Muzyka, who witnessed Nowak dispose of some of plaintiffs' tire invoices. Defendant presents no evidence, however, that these are the *only* two reasons Nowak damaged plaintiff's business by destroying the invoices.

Plaintiffs

dispute Goodyear's conclusions on what motivated Nowak, which is a question for the jury. Clearly the jury could find that Nowak was motivated by other reasons, such as the desire to rid both Goodyear and himself of a 'troublesome dealer.' In fact, Nowak was engaged in furtherance of Goodyear's legitimate business interest when he committed the acts complained of. Goodyear benefited by Nowak's destruction of these invoices as it then had no duty to credit Smith's account for government tire sales.

Pl.Br.Facts at ¶ 1 (citing Muzyka depo. at 93–102).

Although plaintiffs cite Muzyka's deposition, Muzyka did not testify that Nowak intended to rid both Goodyear and Nowak of a troublesome dealer, nor did Muzyka testify that Smith was considered by Goodyear to be a troublesome dealer. The deposition testimony cited by plaintiff does support the conclusion that, if a dealer either does not receive credits which are due or does not receive them in a timely fashion, the resulting cash flow problems could cause the dealer to go out of business. According to Muzyka, if a dealer did not have the documentation for credits he could lose them forever. From these statements by Muzyka, plaintiffs appear to argue that a jury could find that Nowak acted to benefit Goodyear, because without the documentation, Goodyear would not have to credit Smith's account.

■ Defendant argues that the inference that Nowak acted to benefit Goodyear is not reasonable because Nowak's actions were done for the purpose of driving Smith out of business. Defendant states that a franchisor only makes money through successful franchisees, it does not benefit when franchisees go out of business. Thus, defendant reasons, "there is no reasonable inference to be drawn from any facts here that a deliberate sabotage of the operation of Linwood Tire could be intended to further the legitimate business interests of Goodyear." However, an affidavit from Muzyka, included by plaintiffs to support another proposition, states that:

Based on the information I received from Ken Nowak, it is my opinion that Goodyear selected Mike [Smith] as a 'token' franchisee solely in order to relieve pressure the company was under to place a minority owner at the Linwood Store location. Goodyear did not believe that Mike had the capital or experience to run the operation properly, but they allowed him to purchase the franchise because they felt certain he would fail in a short time. Such failure would allow Goodyear to argue that it tried to comply with the requirement of having a minority owner at the Linwood location but things simply did not work out. Such failure would also allow Good-

year to replace Mike with one of its more favored franchisees or make the store a company-owned dealership. Either way, the Linwood store could be purchased from Mike Smith after he failed at a much lower cost than a start-up operation would cost. When Mike Smith began succeeding at the Linwood Store despite Goodyear's failure to train and support him, Goodyear did several things to make certain the business failed. These included failing to credit Mike for government tires that he sold and then cutting off Mike's line of credit.

Muzyka Aff. at ¶ 12. If Muzyka were to so testify, a jury could reasonably infer that Nowak actions damaged Smith's business to benefit Goodyear. Thus, giving plaintiff the benefit of all reasonable inferences from the evidence, there is a dispute over a material fact as to what motivated Nowak to commit the acts against Smith. Therefore, summary judgment is inappropriate as to Counts III, IV, VIII and IX.

B. *Count VI*

■ In Count VI plaintiffs allege that defendant negligently supervised Nowak. Although it is not clear if negligent supervision is an independent tort in Missouri, Missouri courts have permitted recovery for negligent supervision by applying the principles of negligence to a fact situation involving supervision. *Bequette v. Buff*, 862 S.W.2d 921, 925 n. 4 (Mo.Ct.App.1993). In order to recover on this theory, there must be 1) existence of a duty to protect from injury; 2) failure to perform that duty; and 3) injury resulting from the failure. *See Butler v. Circulus, Inc.*, 557 S.W.2d 469, 474 (Mo.Ct.App.1977) (applying general negligence principles in finding liability for negligent supervision).

Defendant argues that a reasonable anticipation of danger is an essential element of actionable negligence. Defendant states that "[i]n particular, a reasonable person must anticipate and guard against the intentional misconduct of another only where he has brought into contact with others 'a person whom he knows or should know to be peculiarly likely to commit intentional misconduct, under the circumstances which afford a peculiar opportunity or temptation for such mis-

conduct.'" Def.Br. at 14 (quoting *Butler v. Circulus, Inc.*, 557 S.W.2d 469, 475 (Mo.Ct. App.1977)). Defendant states that there is no evidence that either plaintiff or defendant knew or should have known of Nowak's intentional misconduct at the time it occurred.

Defendant states that the letters plaintiff sent to defendant complaining about Nowak only gave notice that plaintiff was unhappy with Nowak for incompetence and neglect.

Plaintiffs argue that defendant had a duty to exercise reasonable care in the supervision of Nowak. Plaintiffs state that defendant breached this duty when it failed to heed the warnings by Smith regarding Nowak. Plaintiffs argue that although Goodyear was not warned of the intentional conduct of Nowak which caused injury, the notice given regarding Nowak's incompetence and neglect was sufficient to make it foreseeable that plaintiffs could be injured. Plaintiffs reason that it is foreseeable that a dealer with an incompetent and neglectful Dealer Development Counselor would go out of business. Thus, plaintiffs argue that because the intentional acts of Nowak caused the plaintiff to suffer the foreseeable injury of going out of business, defendant should be liable. To support this argument, plaintiff quotes *Smith v. Archbishop of St. Louis*, 632 S.W.2d 516, 521 (Mo.Ct.App.1982): "[t]o recover, plaintiff need not show that the very injury resulting from defendant's negligence was foreseeable, but merely that a reasonable person could have foreseen that the injuries of the type suffered would be likely to occur under the circumstances."

*Smith*, however, is distinguishable. Although *Smith* involved a claim of negligent supervision, the claim was that a teacher negligently supervised an eight year old student in her class. The child was injured when her clothing caught on fire from a candle in the classroom. The case did not involve a situation where the employer was held responsible for failure to supervise and prevent intentional acts of an employee when the employer had been warned only about the employee's negligence and lack of competence.

■ Although a person can be held liable in negligence for the acts of a third party even though the third party acts intentionally or criminally, this is only true if "a reasonably prudent person would have anticipated the danger and provided against it." *Butler*, 557 S.W.2d at 475 (quoting *Scheibel v. Hillis*, 531 S.W.2d 285, 288 (Mo. en banc 1976)). "A reasonable [person] must anticipate and guard against the intentional or criminal misconduct where he has brought into contact or association with others a person whom he knows or should know to be particularly likely to commit intentional misconduct, under circumstances which afford peculiar opportunity or temptation for such conduct." *Id.*

■ In this case, no facts have been presented that would support a reasonable conclusion that Goodyear knew or should have known that Nowak was likely to attempt to intentionally damage Smith. The letters from Smith cannot reasonably be read as warning Goodyear that Nowak was likely to attempt to intentionally harm Smith. Therefore, summary judgment will be granted in favor of defendant on Count VI.

## C. *Count IX, Breach of Fiduciary Relationship*

In Count IX, plaintiffs seek damages for a breach of fiduciary duty because of breach of contract and Nowak's tortious acts.

Defendant argues that this claim must fail because there is no fiduciary relationship between plaintiffs and defendant. Defendant states that the relationship between a franchisor and franchisee, a business relationship based on an arms-length bargained for contract, does not give rise to a fiduciary relationship. Plaintiffs argue that the actions of Goodyear created a fiduciary relationship in this case.

■ Existence of a business relationship does not give rise to a fiduciary relationship, nor a presumption of such a relationship. *Chmieleski v. City Products Corp.*, 660 S.W.2d 275, 294 (Mo.Ct.App.1983) (citing *Sewell v. Ladd*, 158 S.W.2d 752, 757 (Mo.Ct. App.1942). In *Chmieleski*, the basic elements of a fiduciary relationship are:

(1) as between the parties, one must be subservient to the dominant mind and will of the other as a result of age, state of health, illiteracy, mental disability or ignorance; (2) things of value such as land, monies, a business, or other things of value which are the property of the subservient party must be possessed or managed by the dominant party; (3) there must be a surrender of independence by the subservient party to the dominant party; (4) there must be an automatic or habitual manipulation of the actions of the subservient party by the dominant party; and (5) there must be a showing that the subservient party place a trust and confidence in the dominant party.

*Id.*

Plaintiffs argue that the traditional elements of a fiduciary relationship have been met in this case. Plaintiffs argue that 1) defendant was dominant and exercised control over plaintiffs when defendant cancelled plaintiff's line of credit; 2) defendant managed Linwood Tire by withholding the line of credit while promising to reinstate it if Linwood Tire obtained a $25,000 loan; 3) Linwood Tire surrendered its independence to Goodyear because Goodyear did not provide the training and assistance to Smith so that he could effectively operate his franchise; 4) Smith put his trust in Goodyear when Linwood Tire sought a $25,000 loan based on Goodyear's promised that it would reestablish Linwood Tire's line of credit; and 5) plaintiffs put trust in Goodyear to provide a competent Dealer Development Counselor to assist in the operation of the franchise and to provide a working computer system.

■ The facts set forth by plaintiffs do not establish a fiduciary relationship. I do not agree that because defendant revoked and refused to reinstate plaintiffs' line of credit, defendant managed Linwood Tire or that defendant was dominant and exercised control over plaintiffs. Plaintiffs operated the franchise on a daily basis. Defendant did not share in the profits and losses. Plaintiffs were able to purchase merchandise from other suppliers. Plaintiffs were free to make management decisions such as hiring and firing employees. Smith testified that he

knew he was free to follow or not follow the advice of the defendant. Thus, because defendant did not manage Linwood Tire and because plaintiffs have not shown that they were subservient to the dominant mind and will of defendant, the elements of a fiduciary relationship have not been met.

Plaintiffs also argue that since Harrington, a Goodyear employee, admitted that Goodyear's subsidiary, Rubber City, provided "moral support" and exercised a "fiduciary responsibility" over Linwood Tire that these factors create a fiduciary responsibility and duty.

The portions of the deposition plaintiffs cite to support this are as follows:

Q: Now, you made a statement there about too much emphasis being placed on what Rubber City Capital did. Let's talk about that a little bit. Rubber City Capital was set up in order to enhance the minority's participation in the free market enterprise; is that true?

A: That is true.

Q: It was set up because there was some recognition of some need to do something different in order to get these minorities to participate in that system; is that correct?

A: The need was to make capital available for individuals to participate in the free enterprise system.

Q: So basically then, once you put the money in their hands, then they went through the normal channels, the normal system like anybody else?

A: That is true.

Q: Rubber City Capital offered no additional support, other than financial?

A: Moral support.

Harrington depo. at 42.

Q: Okay. Did you have as the Secretary and Manager of MESBIC [Minority Enterprise Small Business Investment Corporation], the authority to provide additional training to a minority franchisee who had received MESBIC funds, if they needed it?

A: The fiduciary responsibility under the SBA guidelines held me accountable for that.

Q: Okay. It held you accountable for it. That is under the SBA guidelines. I am asking a slightly different question. Did you within the Goodyear system have the authority to see that it got done?

A: No.

Q: Okay. Why not?

A: Because that was the responsibility of others who were working with them. And I sought to work with the individuals who worked with them.

Harrington depo. at 45.

Q: ... context did you ever make any complaints about support, if any?

A: The challenge with your question is that it did not apply to this particular person in the portfolio or this particular business in the portfolio, should I give you an answer. So it is irrelevant for the case that we are talking about.

Q: But you don't get to make that call. There is a Federal Judge in Kansas City who will decide whether or not it is relevant or irrelevant.

A: But we are not in Kansas City.

Q: But we are in this case, we are in this lawsuit, and the Judge is in Kansas City by telephone. I think if you talk to your lawyer, he will tell you that you don't get to say whether it is irrelevant or not and make a decision whether to answer. You answer, unless he tells you you can't.

A: Let me put it to you this way: As I went through and better understood what my role was from a fiduciary responsibility in being a banker and provider of capital to that given entity, my role was to try to bring as much harmony to the group as I possibly could.

Harrington depo. at 68.

Defendant argues that Harrington, a non lawyer, is not qualified to testify as to whether he had a fiduciary duty because this involves a legal conclusion. Defendant states that the facts do not show a fiduciary duty and Harrington's statements cannot create a fiduciary duty.

■ The portions of the deposition cited by plaintiffs are not clear. The question to which Harrington responded on page 68 was

not included in the exhibits presented by plaintiffs. Without knowing the question, I do not know what the witness intended by "fiduciary responsibility." The statement "[t]he fiduciary responsibility under the SBA guidelines held me accountable for that" is also unclear. From this statement I cannot determine whether Harrington thought that he had a fiduciary duty which ran to the plaintiff, to the SBA or elsewhere. In any event, Harrington's characterization of the relationship is not a substitute for facts establishing a fiduciary relationship. Plaintiffs have not presented facts from which the elements necessary to show a fiduciary duty under *Chmieleski* could be inferred. On this record, Harrington's testimony, even evaluated in the light most favorable to plaintiffs, does not create an issue of material fact as to the existence of a fiduciary duty.

Therefore, because plaintiffs have failed to produce facts from which a reasonable inference could be drawn that there was a fiduciary relationship between plaintiffs and defendant, defendant's Motion for Summary Judgment as to Count IX will be granted.

Accordingly, it is ORDERED that:

1) defendant's Motion for Summary Judgment as to Counts III, IV, V and VIII is denied; and

2) defendant's Motion for Summary Judgment as to Counts VI and IX is granted.